CARLTON, J.,
for the Court:
¶ 1. A Harrison County jury found David Anderson guilty of murder and aggravated assault. Anderson now appeals and raises the following issues: (1) whether the circuit court judge made a de facto finding that Anderson was not guilty of murder; (2) whether the circuit court judge erred in denying his motions for a directed verdict and a judgment notwithstanding the verdict (JNOV); (3) whether the circuit court judge erred in denying his motion for a new trial; (4) whether the circuit court judge erred by refusing to admit police reports under the business-record exception to the hearsay rule; (5) whether the circuit court judge erred by allowing the State to admit evidence over Anderson’s objection; (6) whether prose-cutorial misconduct denied Anderson a fair trial; and (7) whether cumulative error requires a reversal of Anderson’s conviction. Finding no error, we affirm.
FACTS
¶ 2. In the early morning hours of April 12, 2009, a shooting occurred at the Boiler Room, a night club in Gulfport, Mississip *46 pi. When police arrived on the scene around 3 a.m., they discovered that Anthony McCord had been shot in the chest and Zonetta Williams had been shot in the leg. McCord was transported to the hospital, where he later died , from his injuries. A Harrison County grand jury indicted Anderson for Count I, the murder of McCord, pursuant to Mississippi Code Annotated section 97-3-19(l)(a) (Rev.2006), and Count II, the aggravated assault of Williams, pursuant to Mississippi Code Annotated section 97-3-7(2)(b) (Rev.2006).
¶ 3. Anderson was tried in August 2011. At trial, Williams testified that after leaving work around 11 p.m. on April 11, 2009, she met her cousin Iwanza Hamilton at the Boiler Room. The Boiler Room had a photo booth located near the back wall, where patrons could have their picture taken. After Williams and Hamilton had their picture taken, they waited by the night club’s rear bar area to receive their printed pictures. As they waited, Williams testified that she heard a noise that sounded like a balloon popping and felt a pain in the lower part of her left leg, as though someone had kicked her. After a few more seconds, Williams heard a scream, followed by the sounds of more people screaming and running. Although she tried to run, Williams fell to the ground because of her injured leg. She crawled behind the bar and shouted out to Hamilton, letting Hamilton know that she had been shot. Williams later learned that her leg was broken, and she underwent surgery to insert a metal rod. in her leg and to remove the bullet.
¶ 4. Hamilton also testified as to what occurred the night of the shooting. As she and Williams waited for their pictures to print, Hamilton saw a man wearing a black shirt (McCord) approach a second man (Anderson) and take a swing at the second man. Hamilton testified during direct examination that she later saw the man wearing the black shirt lying on the ground after the shooting. In addition, Hamilton testified that she did not see the actual shooting but that she did hear the gunshot.
¶ 5. On cross-examination, Anderson’s attorney showed Hamilton a prior statement that she made to police and that was included in the investigator’s report. In the statement, Hamilton told the police that she heard a gunshot and then saw the man in the black shirt fall on the floor and not move. While Hamilton did not dispute that she had signed the statement, she consistently maintained during her trial testimony that she did not remember seeing the man in the black shirt fall to the ground. Instead, she testified that she only remembered seeing him on the ground following the shooting. Hamilton further testified during cross-examination that she heard a gunshot soon after the man in the black shirt took a swing at the other man. She testified that she could not see a gun but that the night club was packed with other people and that she did not think she had been close enough to see a gun.
¶ 6. The State next called Mark Hawthorne to testify. Hawthorne had worked at the Boiler Room as a security guard and had been at the night club when the shooting occurred. Hawthorne testified that around 1:30 a.m., he and Ben Davis, another security guard, saw Anderson and McCord “getting ready to fight, making gestures, arms up, stuff like that, getting in each otherfs] face, ■ [and] pushing each other.” Davis went over to the men and told them to stop. After Davis broke up the altercation, Hawthorne testified that McCord began to walk away from Anderson. However, McCord then headed back toward Anderson, took one or two swings at Anderson, and then Hawthorne *47 heard a gunshot. Hawthorne further testified that he saw a big cloud of smoke appear in the space between the two men.
¶ 7. After the sound of the gunshot, Hawthorne saw McCord fall to the ground, and then both McCord and Davis began cheeking to see whether they had been shot. Hawthorne pursued Anderson as Anderson tried to exit the night club. As Anderson crossed the night club’s stage, Hawthorne testified that he saw a gun in Anderson’s hand. When Hawthorne put a hand on Anderson to prevent him from leaving, Anderson told Hawthorne to let him go. Around the same time, McCord approached Hawthorne and asked for help before collapsing on the floor.
¶ 8. When questioned about the gun he had seen in Anderson’s hand, Hawthorne testified that he had been in the military for twelve years and was familiar with certain types of guns. Despite attempts by Anderson’s attorney to later impeach his testimony with a police report, Hawthorne testified at trial that the gun in Anderson’s hand appeared to be a .40-caliber or .45-caliber handgun. Hawthorne further testified that, at the time the altercation began, he was standing about ten to fifteen feet away from McCord and Anderson and could see everything clearly. Hawthorne stated that, after the gunshot, most of the night club’s patrons cleared out of the area and that only he, Davis, Anderson, and McCord remained in the area.
¶ 9. The State’s next witness, Maurice Bryant, worked as the Boiler Room’s disc jockey the night of the shooting. Prior to Bryant’s testimony, the circuit court judge excused the jury. Because Bryant planned to elaborate on the statement he had given to police two years earlier, the circuit court judge allowed Anderson’s attorney to interview Bryant outside the jury’s presence. After interviewing Bryant, Anderson’s attorney said that he had no objection to Bryant’s testimony.
¶ 10. Bryant testified that on the night of the shooting, when he heard the gunshot, he turned off the music and turned on the night club’s lights. As he scanned the room, Bryant testified that he saw a man walk across the floor who did not appear to be “panicky” like other patrons and who looked out of place. Bryant further testified that he saw the man put a gun in the waistband of his pants and cover it with his shirt as he exited the night club with the rest of the crowd. From a photo line-up, Bryant identified the man as Anderson.
¶ 11. Detective Stephen Carlson with the Gulfport Police Department also testified at Anderson’s trial. Detective Carlson testified that he was neither the on-call detective the night of the shooting, nor the designated “case detective” for the shooting. However, because Detective Carlson was scheduled to be on-call the day after the shooting, the on-call case detective, Justin Hayes, asked him to assist with the case. Detective Carlson testified that at the time of trial Detective Hayes was serving the military on active-duty orders out of town.
¶ 12. At Detective Hayes’s request, Detective Carlson went to the hospital and interviewed Williams and Hamilton. Detective Carlson testified that, in the course of their investigation, the police determined that Anderson was a suspect in the case. Once the police determined a residence for Anderson, they obtained a search warrant. Detective Carlson testified that no one was at the residence when the police executed the search warrant. When they searched the residence, the police found Anderson’s driver’s license; three empty gun boxes that appeared to have each contained a .40-caliber handgun at one time; a box of .40-caliber shells, *48 seventeen of which were missing; and a receipt for the purchase of a .40-caliber handgun. Detective Carlson testified that the receipt was issued to Anderson and contained the serial number of the gun purchased. He further testified that the serial number on the receipt matched the serial number for one of the empty handgun boxes found at the residence. Further testimony from the State’s witnesses established that the projectile removed from Williams’s leg was fired by a .40-caliber gun.
¶ 13. The jury found Anderson guilty of both counts charged in his indictment. For Count I, murder, the circuit court judge sentenced Anderson to life imprisonment, and for Count II, aggravated assault, to a consecutive term of fifteen years, with both sentences to be served in the custody of the Mississippi Department of Corrections (MDOC). Anderson filed a motion for a JNOV or, in the alternative, a motion for a new trial and a finding that the jury’s verdict was against the overwhelming weight of the evidence. The circuit court judge denied Anderson’s motion for a JNOV or a new trial. Aggrieved by the circuit court’s rulings, Anderson appeals.
DISCUSSION
I. Whether the circuit court judge made a de facto finding that Anderson was not guilty of murder.
¶ 14. Anderson first argues that the circuit court judge made a de facto finding on the record that Anderson was not guilty of murder. The circuit court judge made the statement at issue during a conference with the attorneys to discuss the proposed jury instructions and to consider objections to the instructions.
¶ 15. Anderson’s attorney informed the circuit court judge during the discussion that Anderson had decided to object to a jury instruction on manslaughter. Anderson’s attorney also provided case law for the circuit court judge to review, and he asserted that the cases demonstrated that “|j]ust because you have a murder charge, it is not always appropriate to give a manslaughter instruction.... I want to submit to you these cases that show[,] ... cases where the judge declined to give [a manslaughter jury instruction] under the opinion that the facts did not support manslaughter!]]”
¶ 16. After taking time to review the case law provided by Anderson’s attorney, the circuit court judge stated the following:
In this particular case, what we have before the [c]ourt is ... testimony the victim, [and the] [Defendant, got into a pushing match. There’s obviously an altercation. Security attempted to break it up. They did, in fact, break it up for [a few] seconds. When security turned [its] back, [the altercation] started again. This time it was not pushing and shoving, it was blows.
This [c]ourt finds that there is sufficient evidence in the record that a reasonable] and rational fair-minded jury could find the [Defendant not guilty of murder and guilty of manslaughter. It’s incumbent on the [c]ourt to properly instruct. Therefore, S-10A, which is, in fact, a manslaughter instruction, will be given.
Anderson claims that this statement by the circuit court judge amounted to a de facto ruling that he was not guilty of murder. He also argues that, by finding manslaughter to be a reasonable hypothesis and giving a circumstantial-evidence instruction, the circuit court judge effectively gave a peremptory instruction or granted a directed verdict.
*49 ¶ 17. When determining whether the evidence in a case supports a lesser-included-offense instruction, a circuit court judge views the evidence supporting the instruction in the light most favorable to the defendant. See Mease v. State, 539 So.2d 1324, 1330 (Miss.1989). The question is whether the evidence in this case warranted the instruction.[1] See Jackson v. State, 337 So.2d 1242, 1254-55 (Miss.1976), superseded by statute on unrelated grounds as recognized by Gray v. State, 351 So.2d 1342, 1349 (Miss.1977). As previously held by the Mississippi Supreme Court:
A lesser-included[-]offense instruction should be given if there is an evidentiary basis in the record that would permit a rational jury to find the defendant guilty of the lesser-included offense and to acquit him of the greater offense. The lesser-included[-]offense instruction should be granted unless the trial court ... can say, viewing the evidence in the light most favorable to the defendant and considering all the reasonable inferences which may be drawn in favor of the defendant from the evidence, that no reasonable jury could find the defendant guilty of a lesser-included offense.
Drake v. State, 800 So.2d 508, 518 (¶ 40) (Miss.2001) (citation omitted).
¶ 18. Anderson’s argument fails to acknowledge that the standard applied by a circuit court to determine whether the preponderance of the evidence supports a proposed jury instruction for a lesser-included offense differs from the standard that applies to a finding of not guilty by a peremptory instruction. As noted above, for proposed jury instructions, the evidence is viewed in the light most favorable to the defendant.[2] By contrast, when evaluating the merits of a motion for a finding of not guilty, the evidence is viewed in the light most favorable to the State. More specifically, our jurisprudence reflects that the standard applicable to a motion for a finding of not guilty is as follows:
The standard[s] of review for peremptory instructions and directed verdicts are the same. In passing upon a request for a peremptory instruction, all evidence introduced by the State is to be accepted as true, together with any reasonable inferences that can be drawn from that evidence, and if sufficient evidence to support a verdict of guilty exists, the motion for a directed verdict is to be overruled. Mississippi law is clear on the subject of peremptory instructions in criminal cases: peremptory instructions should be refused if there is enough evidence to support a verdict. The court will reverse only when reasonable and fair-minded jurors could only find the accused not guilty.
Williams v. State, 863 So.2d 63, 66-67 (¶ 11) (Miss.Ct.App.2003) (internal citations and quotation marks omitted).
¶ 19. Upon review of the record and applicable ease law, we find that the circuit court judge’s comments failed to amount to a de facto ruling that Anderson was not guilty of murder. Instead, the comments reflect the circuit court judge’s attempt to address Anderson’s argument that a manslaughter instruction is not always appro *50 priate to give in a murder case. The comments also reflect the circuit court judge’s application of the appropriate standard to determine whether the evidence in this case was sufficient to support instructing the jury on the lesser-included-offense instruction of manslaughter.[3] Because the circuit court judge’s statement was merely a response to Anderson’s argument, as well as an explanation of the evidentiary basis and applicable standard of review for evaluating evidentiary support for a. lesser-included-offense instruction on manslaughter, we conclude that he did not make a de facto ruling as to Anderson’s guilt. Therefore, this assignment of error lacks merit.
II. Whether the circuit court judge erred in denying Anderson’s motions for a directed verdict and JNOV.
¶ 20. Anderson next argues that the circuit court judge erred in denying his motion for a directed verdict and his motion for a JNOV. “The standard[s] of review for denial of a [JNOV] and a directed verdict are identical.” Wal-Mart Stores, Inc. v. Littleton, 822 So.2d 1056, 1058 (¶ 4) (Miss.Ct.App.2002) (citation omitted). Both motions challenge “the legal sufficiency of the evidence presented at trial.” Bell v. State, 910 So.2d 640, 646 (¶ 16) (Miss.Ct.App.2005) (citation omitted). We apply the following standard of review:
When reviewing whether a JNOV was erroneously denied[,] we look to the sufficiency of the evidence, and it is viewed and tested in a light most favorable to the State. When reviewing a denial of a JNOV[,] the prosecution is given the benefit of all favorable inferences that may be reasonably drawn from the evidence, and all credible evidence consistent with the defendant’s guilt must be accepted as true. This Court may only reverse a denial of [a] JNOV when[,] with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Price v. State, 892 So.2d 294, 297 (¶ 12) (Miss.Ct.App.2004) (internal citations and quotation marks omitted).
¶ 21. Anderson was convicted of McCord’s murder pursuant to section 97-3-19(l)(a). The State was required to prove the following elements of deliberate-design murder beyond a reasonable doubt: “(1) the defendant killed the victim; (2) without authority of law; and (8) with deliberate design to effect his death.” Brown v. State, 965 So.2d 1023, 1030 (¶ 27) (Miss.2007) (citation omitted). “Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent.” Id. at (¶ 28) (citation omitted). “[A]n inference of intent to kill is raised through the intentional use of any instrument which, based on its manner of use, is calculated to produce death or serious bodily injury.” Jones v. State, 710 So.2d 870, 878 (¶ 35) (Miss.1998) (citation omitted). In addition, Mississippi courts recognize that “shooting a victim with a gun constitute^] deliberate-design murder.” Brown, 965 So.2d at 1030 (¶ 28) (citation omitted). As set forth below, the State presented sufficient evidence at trial for a competent jury to find that Anderson was the person responsible for McCord’s death.
¶ 22. The jury heard testimony from Dr. Paul McGarry, a forensic pathologist, who testified as to McCord’s cause of death. Based on the autopsy he performed, Dr. McGarry determined that McCord died from a gunshot wound that *51 entered the left side of his chest and exited the left side of his lower back. Dr. McGarry testified that McCord’s wound was “typical of a wound of a person standing being faced by the shooter, [with] the shooter shooting from the shoulder downward into the chest and hitting right into the center of the chest so that the bullet went through the heart.” Dr. McGarry further testified that “[t]his would indicate to me that this [was] a close range wound, that [it was] an aimed wound from a shoulder of a person probably as tall as this man or a little taller going downward into [McCord’s] body.” Dr. McGarry’s examination of McCord showed that McCord was five feet nine and a half inches tall. According to Detective Carlson’s testimony, Anderson’s driver’s license stated that he was slightly taller than McCord at six feet and one inch tall.
¶28. The jury also heard testimony from two witnesses who saw Anderson and McCord get into an altercation. The witnesses testified that McCord took a swing at Anderson, and shortly thereafter, the witnesses heard a gunshot. Although Williams never saw the altercation, she testified that she heard a noise similar to a balloon popping, followed by a sharp pain in her leg. Testimony from Lori Beall, a forensic scientist, established that the projectile removed from Williams’s leg was fired by a .40-caliber gun.
¶24. Additional testimony from Hawthorne, the night club’s security guard, revealed that he saw a big cloud of smoke in the air between Anderson and McCord after the gunshot. When Hawthorne tried to pursue Anderson, he noticed that Anderson appeared to be carrying a .40-ealiber or .45-caliber handgun. Bryant, the night club’s disc jockey, also testified that he saw Anderson put a handgun in the waistband of his pants. Bryant testified that he saw Anderson trying to exit the building after the shooting and that he noticed Anderson because Anderson did not appear panicky like the other night club patrons.
¶ 25. Finally, the jury also heard testimony from Detective Carlson that the police, pursuant to a search warrant, searched a residence they believed to be Anderson’s residence. Inside the residence, the police found Anderson’s driver’s license; empty boxes for three different .40-caliber handguns; a box of .40-caliber shells, with several shells missing; and a receipt with Anderson’s name on it for a .40-caliber gun. When viewed in the light most favorable to the State, the evidence that the State presented at trial was sufficient for reasonable and fair-minded jurors to find Anderson guilty beyond a reasonable doubt of deliberate-design murder. See Price, 892 So.2d at 297 (¶ 12).
¶ 26. In addition to his conviction for McCord’s murder, Anderson was also convicted of aggravated assault on Williams. Section 97 — 3—7(2)(b) provides that “[a] person is guilty of aggravated assault if he ... attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]” In addressing whether aggravated assault requires intent, the Mississippi Supreme Court has stated that “there is apparently no specific intent requirement.” McCallum v. State, 996 So.2d 189, 194 (¶ 22) (Miss.Ct.App. 2008) (quoting McGowan v. State, 541 So.2d 1027, 1029 (Miss.1989)).
¶ 27. At Anderson’s trial, Hamilton testified that she and Williams were near McCord and Anderson when the two men began to fight. Although neither woman saw the shooting, they both heard the gunshot, and Williams felt a sharp pain in her leg. As other witness testimony revealed, a .40-caliber bullet was later re *52 moved from Williams’s leg. In addition, the jury heard testimony from two of the State’s witnesses that they saw Anderson with a gun just after the shooting occurred. One "witness even testified that the gun looked like a .40-caliber or .45-caliber handgun. Finally, the State presented evidence that Anderson had purchased a .40-caliber handgun. Based on this testimony presented at trial, the jury obviously found that sufficient evidence existed to find Anderson guilty of aggravated assault against Williams. Viewing the evidence in the light most favorable to the State, and giving the State the benefit of all favorable inferences that may be reasonably drawn from the evidence, we find that sufficient evidence existed to support Anderson’s aggravated-assault conviction. See Price, 892 So.2d at 297 (¶ 12).
¶ 28. Because we find that the State presented sufficient evidence for a competent jury to find Anderson guilty beyond a reasonable doubt of deliberate-design murder and aggravated assault, we find no error in the circuit court judge’s denial of Anderson’s motions for a directed verdict and a JNOV. See id. Therefore, this issue lacks merit.
III. Whether the circuit court judge erred in denying Anderson’s motion for a new trial.
¶29. We next address Anderson’s argument that the circuit court judge erred in denying his motion for a new trial. This Court reviews the denial of a motion for a new trial based on the weight of the evidence. Id. at (¶ 10). We weigh the evidence in the light most favorable to the verdict. McCallum, 996 So.2d at 195 (¶ 23). In addition, we accept as true all evidence in favor of the State, and we reverse only if the trial court abused its discretion. Price, 892 So.2d at 297 (¶ 11). A motion for a new trial “should not be granted except to prevent an unconscionable injustice.” White v. State, 761 So.2d 221, 224 (¶ 12) (Miss.Ct.App.2000) (citation omitted).
¶ 30. Anderson states in his brief that some of the State’s witnesses “clearly changed their testimony during trial, giving alleged versions [of events] much more incriminating than the original statements given to the [police].” However, Mississippi law is well-settled on this point and states that “[t]he credibility of witness testimony is the province of the jury.” Pnce, 892 So.2d at 297 (¶ 15). “The Mississippi Supreme Court has repeatedly held that the jury is responsible for judging the credibility of witnesses and the weight that should be attached to their testimony.” Id.
¶ 31. The jury heard all the testimony presented at trial and found Anderson guilty of both counts charged in his indictment. With respect to the murder charge, the jury heard testimony that McCord died from a bullet wound to his chest; that McCord and Anderson got into an altercation right before the shooting; that witnesses saw Anderson with a gun immediately after the shooting; that the gun appeared to be a .40-caliber or .45-caliber gun; and that .40-caliber shells and a receipt for a .40-caliber gun were found in Anderson’s residence. As to the aggravated-assault charge, the jury heard all of the above testimony, as well as testimony that Williams was standing close to McCord and Anderson when the altercation began; that she heard a popping sound followed by a feeling of pain in her lower leg; and that a .40-caliber bullet was later removed from her leg.
¶ 32. Weighing the evidence in the light most favorable to the verdict, and accepting as true all evidence in favor of the State, we cannot find that the jury’s verdict was so against the weight of the evi *53 dence that it constituted an unconscionable injustice. See Price, 892 So.2d at 297 (¶ 11). Therefore, we cannot find that the circuit court judge abused his discretion by denying Anderson’s motion for a new trial. Accordingly, this issue lacks merit.
IV. Whether the circuit court judge erred by refusing to admit police reports under the business-record exception to the hearsay rule.
¶ 38. Anderson next argues that the testimony of three of the State’s witnesses differed from their prior statements to police and that they claimed for the first time at trial that they witnessed additional events materially incriminating to his defense. Specifically, Anderson argues that the trial testimony given by Hamilton, Hawthorne, and Bryant differed from their prior statements to police. Anderson further asserts that, under the business-record exception to the hearsay rule, he should have been allowed to cross-examine Detective Carlson as to these witnesses’ statements contained in the police reports. By pursuing this line of questioning, Anderson argues that he could have shown the discrepancies that existed between the witnesses’ prior statements to police and their testimony at trial, thereby effectively impeaching their testimony.
¶ 34. “[I]t is well settled that the relevancy and admissibility of evidence are within the trial court’s discretion^] and reversal may be had only where that discretion has been abused.” Bingham v. State, 723 So.2d 1189, 1191 (¶ 9) (Miss.Ct. App.1998) (citations omitted). In the present case, Anderson argues that the police reports he tried to admit into evidence should have been admitted under the business-record exception to the hearsay rule. To admit evidence under this exception, the following foundational requirements must be established:
1) the statement is in written or recorded form;
2) the record concerns acts, events, conditions, opinions[,] or diagnoses;
3) the record was made at or near the time of the matter recorded;
4) the source of the information had personal knowledge of the matter;
5) the record was kept in the course of regular business activity; and
6) it was the regular practice of the business activity to make the record.
Flowers v. State, 773 So.2d 309, 331-32 (¶ 72) (Miss.2000). “The comments to the rules also state that there must be testimony from a foundational witness to provide evidence of the foundation requirements.” Id. at 332 (¶ 73) (citing M.R.E. 803(6) & cmt.). “In Flowers, the supreme court held that a person who is familiar with the contents, terms, and meaning of a form is competent to give testimony regarding the foundational requirements of the business[-]record exception.” Dillon v. Greenbriar Digging Serv., Ltd., 919 So.2d 172, 176 (¶ 10) (Miss.Ct.App.2005) (citing Flowers, 773 So.2d at 332-33 (¶ 77)).
¶ 36. In Copeland v. City of Jackson, 548 So.2d 970, 975 (Miss.1989), the supreme court held that police reports prepared during the investigation of an accident were admissible pursuant to the business-record exception. Although the officer who filed the report had died, “the Chief of Police for the City of Jackson testified at length that the report ... was prepared in the regular course of [the officer’s] duties as a police officer.” Id. The supreme court found the following comment to Rule 803(6) of the Mississippi Rules of Evidence helpful to its analysis:
[T]he source of the material [in the police report] must be an informant with *54 knowledge who is acting in the course of the regularly conducted activity. This is exemplified by the leading case of Johnson v. Lutz, 253 New York 124, 170 N.E. 517 (1930), which is still the applicable law today under the rule. That case held that a police report which contained information obtained from a bystander was inadmissible; the officer qualified as one acting in the regular course of a business, but the informant did not.
Copeland, 548 So.2d at 975. While the Copeland court held that the officer’s report was admissible, it cautioned that its holding did not mean all the report’s contents were likewise admissible. Id. As the supreme court explained, “For example, there may be notations in such a report which are recitations of statements of others, and would be inadmissible even though the officer were present in court testifying. The report is simply a substitute for the officer appearing in person and testifying.” Id. at 975-76.
¶ 36. Citing to the supreme court’s cautionary statements in Copeland, this Court has previously said:
Statements and information contained within the [police] report that are factual in nature would be admissible and qualify as information routinely obtained in the regular course of business under Rule 803(6). However, the very nature of police investigation reports also requires the taking of statements from parties, witnesses, and bystanders, statements which lack the safeguards outlined within the definition of hearsay and non-hearsay under Rule 801 [of the Mississippi Rules of Evidence].
Bingham, 723 So.2d at 1192 (¶ 14). As a result, in Bingham we affirmed the trial court’s exclusion of a police report where the defendant sought to introduce the report for the sole purpose of using the hearsay statements contained within it to contradict witness testimony provided at trial. Id. at (¶ 15). We held that the admission of the police report for such a purpose was improper. Id.
' ¶ 37. In his brief to this Court, Anderson argues that the trial testimony provided by Hamilton, Hawthorne, and Bryant differed from their prior unsworn statements to police. In reviewing this issue, we note that the record reflects that Anderson possessed an opportunity to cross-examine each of these witnesses at trial. In addition, during the cross-examinations, Anderson’s attorney questioned the witnesses about the inconsistencies between their trial testimony and their prior statements to police. Anderson’s attorney also conducted a cross-examination of Detective Carlson and attempted to ask the detective about Hawthorne’s prior statement to police. However, while Detective Carlson interviewed Hamilton, he was not the officer who interviewed Hawthorne and Bryant. Therefore, the State raised a hearsay objection. Out of the jury’s presence, Anderson’s attorney explained that he was trying to impeach Hawthorne’s testimony with the prior statement that Hawthorne gave to police, and he asserted that the police report should be admitted under the business-record exception. However, because Detective Carlson was not the officer who interviewed Hawthorne, the circuit court judge found the impeachment attempt improper.- See Flowers, 773 So.2d at 326 (¶¶ 57-58) (citing Rule 613 of the Mississippi Rules of Evidence and providing guidelines for the proper impeachment of a witness by a prior inconsistent statement).
¶ 38. Upon review, we find that the circuit court judge did not abuse his discretion by refusing to admit .the police report under the business-record exception. Like the defendant in Bingham, Anderson’s sole purpose in attempting to *55 admit into evidence the police report at issue was to impeach witnesses’ trial testimony with their prior inconsistent statements. As we held in Bingham, however, admitting a police report into evidence for this purpose alone is improper. See Bingham, 723 So.2d at 1192 (¶ 15). See also M.R.E. 613; M.R.E. 802; M.R.E. 808.
¶ 39. As Anderson admits in his brief, his objective at trial was to elicit from Detective Carlson prior witness statements even though another officer obtained the prior unsworn statements. The record reflects that Detective Carlson never interviewed Hawthorne and possessed no personal knowledge regarding Hawthorne’s statement to police. The record also reflects that Anderson possessed the opportunity to cross-examine each witness during his trial as to any inconsistencies with their prior statements, and as previously discussed, witness credibility and the weight given to such testimony lie within the province of the jury. See Price, 892 So.2d at 297 (¶ 15). Based on the facts and applicable case law, we find no abuse of discretion in the circuit court’s refusal to admit the police report into evidence. Therefore, this issue lacks merit.
Y. Whether the circuit court judge erred by allowing the State to admit evidence over Anderson’s objection.
¶ 40. Anderson next contends that the evidence found pursuant to the search warrant failed to prove that he used a gun at the Boiler Room the night of the shooting. However, he asserts that seeing empty gun boxes and a partially empty ammunition box in his alleged residence tapped into the prejudices of the jurors. Anderson therefore argues that the circuit court judge erred by admitting the evidence because it was not relevant.[4] Alternatively, he contends that, even if relevant, the evidence was unfairly prejudicial and was improper evidence of other crimes, wrongs, or bad acts.
¶ 41. The supreme court has previously stated:
Where a trial court determines that potentially prejudicial evidence possesses sufficient probative value, it is within that court’s sound discretion whether or not to admit same, since [Rule] 403 [of the Mississippi Rules of Evidence] does not mandate exclusion but rather provides that the evidence may be excluded. The task of an appellate court in reviewing such a determination is not to conduct its own de novo Rule 403 balancing, but simply determine whether the trial court abused its discretion in weighing the factors and in admitting or excluding the evidence.
Jones v. State, 904 So.2d 149, 152 (¶ 7) (Miss.2005) (internal citations omitted).
¶42. The record reflects that the circuit court judge presiding over Anderson’s trial fulfilled his duty pursuant to Rule 403 to consider both the probative and prejudicial value of the evidence seized from Anderson’s residence. After hearing arguments from both sides, the circuit court judge recounted the following facts presented through trial testimony:
Hawthorne testified that he saw this [Defendant with a weapon. Although he couldn’t say exactly what it was, he said it was a .45[-] or a .40[-]caliber weapon, not a .22, not a .25, not a .38, not a .357.... The testimony has come out that ... Williams was, in fact, shot. A projectile was removed from her leg *56 ... and there is testimony that it is a .40[-]caliber projectile. A detached magistrate signed a search warrant on this [Defendant’s home. Upon the execution of that search warrant, the police [found] ammunition, .40[-]ealiber ammunition, ... [and] three gun cases, all of which [were] .40[-]caliber gun cases.
After balancing the probative value of the evidence relative to the danger of unfair prejudice to Anderson, the circuit court judge concluded that the evidence was relevant and that the probative value outweighed any prejudice to Anderson.[5]
¶ 43. Anderson also argues that the circuit court judge improperly admitted evidence of other crimes' by allowing items found during the search of his residence into evidence. As Detective Carlson testified, police discovered three .40-eali-ber-handgun cases, a box of .40-caliber shells, and a receipt for the purchase of a .40-caliber handgun at Anderson’s residence. In his brief, Anderson asserts that this Court “has reversed convictions for improper admission of evidence, by the State, which improperly makes the Defendant look bad.” At his trial, Anderson argued that the State was “trying to say that the act of [Anderson] having ... that many guns and this many bullets somehow makes him a bad person. And there are people out there [who] fear guns and draw unfair conclusions.”
¶ 44. In response to Anderson’s objection, the circuit court judge emphasized that he would not allow the parties to go into evidence of other crimes. The record also reflects that, after the State introduced the search-warrant evidence through Detective Carlson’s testimony, the State then proceeded to ask only questions related to the crimes for which Anderson was indicted and tried.[6] Because we find no abuse of discretion in the circuit court judge’s admission of the evidence seized pursuant to the search warrant, this issue lacks merit.[7]
VI. Whether prosecutorial misconduct denied Anderson a fair trial.
¶ 45. In his next issue, Anderson claims that he was denied a fair trial because of prosecutorial misconduct. Specifically, Anderson claims that the State’s attorney misled the jury by intentionally: (1) asking witnesses misleading questions to create the impression that their testimony did not differ from their prior statements to police; and (2) failing to call Detective Hayes, the case detective, as a witness to prevent Anderson from impeaching the witnesses’ testimony.
¶ 46. With regard to this issue, Anderson’s brief asserts the following argument:
*57 [T]he [p]roseeutor knew that the [c]ase [d]etective was gone, knew that the witnesses were not testifying consistently] with their pretrial statements to the detectives, but nevertheless, continued to use the witnesses, unfettered by any possible impeachment due to the absence of the [c]ase [d]etective, and actually demonstrated that he supported the new testimony. This [was] misleading by the prosecutor[,][w]hich is fundamentally unfair.
¶ 47. As the State noted in its brief, Anderson is procedurally barred from raising this issue on appeal because he failed to make any objection on this basis at trial. See Simmons v. State, 805 So.2d 452, 489 (¶ 98) (Miss.2001). As this Court has previously recognized, “[questions of prosecutorial misconduct will not be addressed where the defendant did not raise the question at trial.” Jackson v. State, 832 So.2d 579, 581 (¶ 3) (Miss.Ct. App.2002) (citation omitted). The “[failure to object at trial acts as a procedural bar in an appeal.” Id. (citation omitted).
¶ 48. Notwithstanding the procedural bar to this issue, Anderson’s argument lacks merit. “The standard of review for prosecutorial misconduct has been clearly established by the Mississippi Supreme Court as follows: Where prose-cutorial misconduct endangers the fairness of a trial and the impartial administration of justice, reversal must follow.” Catchings v. State, 39 So.3d 943, 947 (¶ 10) (Miss.Ct.App.2009) (citation and internal quotation marks omitted).
¶ 49. In the present case, Anderson fails to demonstrate that a reversible error occurred due to any prosecutorial misconduct.[8] Anderson first claims that the State’s attorney intentionally asked witnesses misleading questions to create the impression that their testimony did not differ from their prior statements to police. As the State points out in its brief, however, Anderson fails to even specify the questions that he believed were misleading. In addition, the record reflects that Anderson possessed ample opportunity at trial to cross-examine each witness as to any inconsistencies with his or her prior statements to police. In fact, as previously noted, during his cross-examination of Hamilton, Hawthorne, and Bryant, Anderson’s attorney specifically asked each witness about the inconsistencies between his or her trial testimony and prior statements to police. Thus, this issue was brought to the jury’s attention, and as a strictly factual dispute, it fell within the jury’s province to determine the credibility of each witness and the weight to give to such testimony. See Price, 892 So.2d at 297 (¶ 15).
¶ 50. In his second claim regarding prosecutorial misconduct, Anderson alleges that the State failed to call Detective Hayes as a witness to prevent Anderson from using his testimony to impeach other witnesses’ testimony. Like Anderson’s other arguments, however, this claim also lacks merit. Anderson possessed the ability to compel Detective Hayes’s presence at his trial by subpoenaing Detective Hayes.[9] *58 However, Anderson failed to take the necessary steps to ensure Detective Hayes’s presence at his trial. Therefore, upon review of the record and applicable case law, we find that Anderson’s arguments regarding prosecutorial misconduct lack merit.
VII. Whether cumulative error requires reversal of Anderson’s conviction.
¶ 51. In his final assignment of error, Anderson claims that the cumulative errors in his case denied him a fair trial and require a reversal of his conviction. “Under the cumulative-error doctrine, individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial.” Harding v. State, 17 So.Bd 1129, 1133 (¶ 13) (Miss.Ct.App.2009) (citation and internal quotation marks omitted). As previously discussed, we find that all of Anderson’s assignments of error lack merit. Therefore, Anderson’s case contains no cumulative error that denied him a fair trial or requires reversal of his conviction.[10] As a result, this final issue also lacks merit.
¶ 52. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE IMPRISONMENT, AND COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF FIFTEEN YEARS, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. During oral argument, the State cited to a case not mentioned in its brief, Lambert v. State, 462 So.2d 308, 315 (Miss. 1984), where the Mississippi Supreme Court found that the trial court did not err in giving a lesser-included-offense instruction on manslaughter since the evidence in the record supported the instruction. Upon this Court's grant of his motion, Anderson supplemented his oral argument by brief to distinguish Lambert from the facts of his case.

. See Drake, 800 So.2d at 518 (¶ 40).

. See Miss.Code Ann. § 97-3-35 (Rev.2006) (defining manslaughter).

. See M.R.E. 401 (Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”).

. See M.R.E. 403.

. We note that the record reflects that the State never alleged that Anderson illegally obtained or possessed the .40-caliber gun cases and shells. See also Collins v. State, 513 So.2d 877, 879 (Miss. 1987) (“[EJvidence may be introduced as part of the res gestae of a crime if it was an inseparable part of the entire transaction.... The admission of res gestae evidence is largely left to the sound discretion of the trial judge.” (internal citations omitted)); Ellis v. State, 255 So.2d 325, 326-27 (Miss.1971) ("It has always been the rule in this state that proof of other offenses is admissible in a criminal prosecution if they are closely related and not too remote in time so that they are a part of the res gestae.” (citations omitted)).

.The State can offer police testimony regarding the course of the police's investigation. See generally Myhand v. State, 981 So.2d 988, 991 (¶ 8) (Miss.Ct.App.2007) (officer’s testimony in response to prosecutor’s question as to why he went to person’s property was admissible to explain his actions during course of his investigation).

. See Clark v. State, 503 So.2d 277, 280 (Miss. 1987) ("There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court.... It is the duty of counsel to make more than an assertion[;][he] should state reasons for [his] propositions, and cite authorities in ... support.” (internal citations omitted)).

. See Patton v. State, 109 So.3d 66, 79 (¶ 39) (Miss.2012) ("The Sixth Amendment affords a defendant the right to have compulsory service for obtaining witnesses in his favor. The Mississippi Constitution mirrors this right by allowing the accused to obtain witnesses in *58 his favor.” (internal citations and quotation marks omitted)).

. See Harding, 17 So.3d at 1133 (¶ 13) (”[I]f there are no individual errors, there can be no cumulative error that warrants reversal." (citation omitted)).