# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01285-COA

**CLYDE CHATMAN, JR. A/K/A CLYDE CHATMAN A/K/A LITTLE CLYDE**                  APPELLANT

**v.**

**STATE OF MISSISSIPPI**                  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/26/2016 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/17/2017 |
| MOTION FOR REHEARING FILED: | 10/31/2017 - DENIED; AFFIRMED - 04/17/2018 |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, J., FOR THE COURT:**

**MODIFIED OPINION ON MOTION FOR REHEARING**

¶1.     The motion for rehearing is denied. The previous opinion of this Court is withdrawn, and this opinion is substituted in its place.

¶2.     Clyde Chatman was convicted of the murder of Patrick Williams and sentenced to life imprisonment with eligibility for parole. After his post-trial motions were denied, he appealed, arguing the sufficiency and weight of the evidence do not support the verdict, and testimony regarding an accomplice's statement to law enforcement violated his right to

confront witnesses under the Confrontation Clause. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. On the evening of March 27, 2012, Williams was visiting his girlfriend, Tanedra Christian, in Jonestown, Mississippi. While the two were talking and kissing on her front porch, a white car drove by her house, turned around, and came back up the road. Williams abruptly left and walked up the road toward his house, ignoring Christian's calling out after him. A few minutes later, Christian heard gunshots. Larry Wiley, a neighbor, and Toshema Crosby, the owner of a nearby gas station, also heard shooting, and Crosby found Williams lying on the ground outside her store with gunshot wounds. When she asked Williams who shot him, he replied: "Those mother f***ers from Friars Point." Crosby called 911 and contacted Williams's aunt, Shamon Williams. When Shamon arrived, Williams told her that "Little Clyde and them" had shot him and that they were driving a "white car." The first officer on the scene was Deputy Stephen James, who heard Williams say, "I'm gonna get those mother f***ers. They shot me." Williams died at the scene.

¶4. Law enforcement recovered .25-caliber shell casings in the road nearby; forensic testing indicated the casings were all fired from the same gun. By the following day, law enforcement had arrested Friars Point residents Chatman, John Battle, and Reginald Cox for Williams's murder. The three suspects were tested for gunshot residue (GSR) and submitted buccal swabs. Law enforcement also tested a white Crown Victoria titled to Chatman's mother for GSR and fingerprints, as well as a glove found in the back seat. A search was conducted for the weapon in Friars Point, Mississippi, but it was never located.

2

¶5.     On May 30, 2013, Chatman, Battle, and Cox were co-indicted for deliberate-design murder. *See* Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2006).[1]  Chatman and Cox were tried on February 16-18, 2016, in Coahoma County Circuit Court.[2]

¶6.     Christian, Williams's girlfriend, testified that before Williams left her home, he said "something about he was tired of something."  She also testified that Chatman had expressed a romantic interest in her, bringing her a toy bear and flowers on Valentine's Day.  Shameka Cox, Cox's mother, also lived in Jonestown and said Cox and Chatman had visited her that evening.  She noted it was odd since Cox never came to visit her.

¶7.     Deputy Fernando Bee of the Coahoma County Sheriff's Department testified he had seen Chatman driving a white Crown Victoria in Jonestown the night Williams was shot.  He noted two persons in the car with Chatman.  Deputy Bee, who was off duty, was talking with another individual in the yard of a Jonestown home when he heard shooting.  After he learned Williams had been shot, he went home to get ready for work and then returned to the scene.  Chatman's sister later phoned Deputy Bee to inform him that Chatman wanted to turn himself in.

¶8.     A forensic pathologist, Dr. Mark LeVaughn, testified that Williams sustained three gunshot wounds: two to the right side of his back, and one to the right forearm.  He determined the shots were not fired at close range.  DNA results for the rear passenger-door

---

[1] They were also indicted under the firearm-enhancement statute, Mississippi Code Annotated section 97-37-37 (Rev. 2006), for killing Williams by discharging a firearm while in a car, but this count was later dismissed as to all defendants.

[2] Since Chatman testified and implicated Cox in his testimony, the trial judge granted Cox's motion for severance during the proceedings.

grip of the Crown Victoria and the glove found in the car "contained a profile consistent" with Chatman. Forensic testing also revealed "particles indicative of gunshot residue" on Chatman's palms. There were also GSR particles found on Battle's and Cox's hands and located "behind [the] driver seat and headrest."

¶9. Chatman testified that he was in Jonestown, driving the white Crown Victoria with the windows down. His version of events was that Williams ran up to his car and "attacked" him. Then Chatman heard gunshots and saw Battle shooting a gun. In shock, he drove home to Friars Point. He denied having a gun and shooting Williams. He admitted that he liked Christian, claiming the two had relations in the past. He had planned to drive by and see Christian that night in Jonestown, but Chatman insisted he and Cox went to Shameka's home instead.

¶10. Chatman was convicted of murder by a Coahoma County Circuit Court jury. Since he was a juvenile, the trial judge carefully weighed the factors outlined in *Miller v. Alabama*, 567 U.S. 460 (2012), at a bifurcated sentencing hearing, and sentenced Chatman to life in prison with eligibility for parole. Chatman filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial, which the trial court denied. He now argues on appeal Deputy Bee's testimony that Battle told law enforcement where to find the weapon violated the Confrontation Clause. He also challenges the sufficiency and weight of the evidence.

**DISCUSSION**

**I.     Whether the testimony concerning Battle's statements to police violated Chatman's right to confront witnesses.**

4

¶11.    Chatman claims that his right to confront witnesses was violated during the State's questioning of Deputy Bee about the search for the weapon, specifically when Deputy Bee testified that Battle told law enforcement where to look for the gun.

> Q.    Now, at some point, did your investigation lead you to search for a potential weapon?
>
> A.    It did.
>
> Q.    Okay.  Where was that search done?
>
> A.    From Friars Point to . . . 61 road.
>
> . . . .
>
> Q.    The information that you received to search for the weapon came from who?
>
> A.    John Battle.
>
> . . . .
>
> A.    We went out to the scene of where Battle said the weapon was tossed from the vehicle, but when we made it out there, they were working in the fields. . . .  [W]e couldn't find anything.

The defense made no objection to this testimony, which waives this issue on appeal.  "The failure to object to testimony at trial 'waives any assignment of error on appeal.'"  *Ross v. State*, 16 So. 3d 47, 57 (¶21) (Miss. Ct. App. 2009) (quoting *Johnson v. State*, 477 So. 2d 196, 214 (Miss. 1985)).

¶12.    Chatman acknowledges the failure to object at trial, but contends this Court should review this issue for plain error.  The plain-error rule is applied "only if 'a defendant's substantive or fundamental rights are affected.'"  *Willie v. State*, 204 So. 3d 1268, 1279 (¶29)

(Miss. 2016) (quoting *Foster v. State*, 148 So. 3d 1012, 1018 (¶20) (Miss. 2014)). This Court has held that a violation of the Confrontation Clause constitutes "a violation of a 'fundamental, substantive right.'" *Ezell v. State*, 132 So. 3d 611, 612 (¶3) (Miss. Ct. App. 2013) (quoting *Smith v. State*, 986 So. 2d 290, 294 (¶10) (Miss. 2008)). In applying the plain-error rule, we determine: "(1) whether the trial court deviated from a legal rule; (2) whether the error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial." *Willie*, 204 So. 3d at 1279 (¶29). We will only reverse if the error "resulted in a manifest miscarriage of justice." *Id*.

¶13.    The Confrontation Clause "only applies to statements that are 'testimonial.'" *Corbin v. State*, 74 So. 3d 333, 338 (¶13) (Miss. 2011) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). "[N]on[]testimonial hearsay does not trigger the need for confrontation to be admissible." *Frazier v. State*, 907 So. 2d 985, 997 (¶39) (Miss. Ct. App. 2005).

> In the context of police interrogations, . . . a statement is testimonial "when the circumstances objectively indicate that there is no ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis* [*v. Washington*], 547 U.S. [813,] 822 [(2006)]. A statement is nontestimonial when "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.*

*Matthies v. State*, 85 So. 3d 872, 874 (¶8) (Miss. Ct. App. 2011). In this context, Deputy Bee's mention of Battle's statement was elicited to show how police conducted their investigation for the weapon; there was nothing testimonial about the statement. *See United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) (finding the Confrontation Clause not applicable to an out-of-court statement alluded to by a witness, which merely "served the

6

purpose of explaining how certain events came to pass or why the officers took the actions they did").

¶14. Furthermore, the testimony does not constitute plain error because defense counsel had already elicited this information during cross-examination of another witness prior to Deputy Bee's testimony as part of its trial strategy. Deputy Marena Jones was asked on cross-examination how law enforcement was able to determine where to search for the weapon. The State objected to that information as hearsay. Defense counsel argued that it was "[j]ust as a part of the investigation, as a part of the events that happened[.]" Defense counsel also asserted that this information was being elicited to demonstrate that "[s]omebody other than [Chatman] showed them where the gun was or had knowledge of where the gun was." The court overruled the State's objection and allowed the testimony:

> Q.    Investigator Jones, . . . where did you get the information concerning the location to look for the weapon?
>
> A.    During the course of the investigation, it was made known of a possible location where the weapon was located.
>
> Q.    By whom?
>
> A.    The - another co-defendant.
>
> Q.    And what's the co-defendant's name?
>
> A.    John Battle, Jr.
>
> . . . .
>
> Q.    So John Battle, Jr., gave you information on where to look for the gun?
>
> A.    Not me.

Q. Well, who did he give it to?

A. Another investigator.

¶15. "If a defendant opens the door to [the] line of testimony, ordinarily he may not complain about the prosecutor's decision to accept the benevolent invitation to cross the threshold." *Doby v. State*, 557 So. 2d 533, 539 (Miss. 1990) (citing *United States v. Delk*, 586 F.2d 513 (5th Cir. 1978)). In *Campbell v. State*, 883 So. 2d 115, 120 (¶17) (Miss. Ct. App. 2004), the defendant argued "that his Sixth Amendment right to confront witnesses was violated when his trial attorney introduced certain statements made by [his] co-indictee," and that this error was "so fundamental that it generate[d] a miscarriage of justice that rises to the level of plain error." This Court found the issue procedurally barred and without merit, holding: "Since there was a legitimate trial tactic or purpose involved in putting the statements into evidence, there is no ground to find that the waiver of the right of confrontation was invalid." *Id*. at 120 (¶18); *see also United States v. Lopez-Medina*, 596 F.3d 716, 731 (10th Cir. 2010) ("[C]ounsel in a criminal case may waive a client's Sixth Amendment right of confrontation by opening the door, 'so long as the defendant does not dissent from his attorney's decision and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy.'").

¶16. Chatman's counsel unequivocally stated that he wanted to introduce this testimony as part of his trial strategy. He wanted to that show his client did not provide the officers with the location of the gun–Battle did. Therefore, Chatman waived his right under the Confrontation Clause to object to this testimony later in the trial. We find this issue without

8

merit.

### II. Whether the evidence was insufficient to support the verdict or, in the alternative, whether the verdict was against the overwhelming weight of the evidence.

¶17. Chatman was convicted of deliberate-design murder, which is defined as the "killing of a human being without the authority of law . . . [w]hen done with deliberate design to effect the death of the person killed, or of any human being[.]" Miss. Code Ann. § 97-3-19 (1)(a). Chatman argues there was insufficient evidence to show he deliberately designed to kill Williams. He says he was merely present at the shooting; the only evidence of conspiracy was the fact that the three men were in the same car, and the evidence was "inconclusive" as to whom shot Williams. He submits that "the fact that his DNA was found throughout the vehicle is not inculpatory."

¶18. The relevant inquiry in reviewing a challenge to the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), *abrogated on other grounds by Little v. State*, 233 So. 3d 288 (Miss. 2017). Thus, in reviewing a trial court's denial of a JNOV, "the prosecution is given the benefit of all favorable inferences that may be reasonably drawn from the evidence, and all credible evidence consistent with the defendant's guilt must be accepted as true." *Howell v. State*, 144 So. 3d 211, 216 (¶11) (Miss. Ct. App. 2014) (quoting *Price v. State*, 892 So. 2d 294, 297 (¶12) (Miss. Ct. App. 2004)).

9

¶19. Considering the evidence in the light most favorable to the State, we find sufficient evidence to support Chatman's murder conviction. Williams told Crosby that the persons who shot him were from Friars Point, and he identified to his aunt that "Little Clyde and them" shot him. The prosecution also established that Chatman had a motive to kill Williams – he was angry Williams was dating Christian. Chatman admitted that he was in a white car that evening, driving around Jonestown, and that he liked Christian, Williams's girlfriend. Christian saw a white car drive by while she was with Williams on her front porch, and she heard the gunshots a few minutes later, after Williams had walked up the road. She also said Chatman had attempted to call her on her cellphone that day, but she did not talk to him. "Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Anderson v. State*, 154 So. 3d 42, 50 (¶21) (Miss. Ct. App. 2014) (quoting *Brown v. State*, 965 So. 2d 1023, 1030 (¶28) (Miss. 2007)). The white Crown Victoria, owned by Chatman's mother, contained GSR, and particles indicative of GSR were found on Chatman's palms. The glove found in the back seat also had Chatman's DNA. The prosecution noted during closing argument that had Chatman been driving the car as he claimed, any GSR would have likely settled on the back of his hands, not his palms. Regarding Chatman's assertion that Williams came up to the car and "attacked" him, this testimony is contradictory to the forensic testimony that Williams was shot in the back and on his right side. As the trial judge commented during sentencing:

> [W]hat the defendant testified to was inconsistent with the fact that we knew the deceased was shot in the back. I don't see how [Williams] could be standing and swinging at the driver of a car . . . and all of a sudden have a hail of gunfire and get shot in the back. You're going to be facing him if you're

10

swinging at him.

¶20. Chatman also contends the verdict was against the overwhelming weight of the evidence. In reviewing the weight of the evidence, "we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18) (citing *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997)). Based on the evidence summarized above, we find that allowing Chatman's conviction to stand would not sanction an unconscionable injustice, as there was overwhelming evidence that Chatman murdered Williams. Chatman's conviction for first-degree murder and life sentence are affirmed.

¶21. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**