LEE, J.,
for the Court:
¶ 1. Appellant Timmie Hubbert appeals a murder conviction he received in the Circuit Court of Attala County and his sentence to a life term in the custody of the Mississippi Department of Corrections. On appeal, Hubbert assigns as error the circuit court’s denial of his pretrial motion in limine to suppress any testimony or discussions of the fact that he refused to allow police officers to administer a neutron activation test after he was arrested. Concluding that the circuit court did not err in denying Hubbert’s motion, we affirm.
FACTS
¶ 2. Seventeen-year-old Appellant Timmy Hubbert was arrested on a warrant in the early morning hours on July 12, 1997 for the murder of Steve Cotton. Hubbert was given his Miranda warnings both orally and in writing, and he signed a written waiver of his Miranda rights indicating that he understood his rights. Officer Kenny Summers with the Attala County Sheriffs Office then questioned Hubbert. Hubbert denied being at the lounge where Cotton was shot that evening. Officer Summers then asked Hub-bert to submit to a neutron activation test, more commonly known as a gun powder residue test, to which Hubbert agreed. Thereafter, Summers altered a “consent to a search” form to reflect that Hubbert was consenting to the test. However, when asked to sign the “consent” form, Hubbert refused stating that he wanted to speak to his lawyer. Officer Summers wrote the word “refused” in on the signature line and discontinued his questioning.
¶ 3. Prior to trial, Hubbert filed a motion in limine to exclude any mention to the jury of his refusal to submit to the gunpowder residue test. Following a pretrial hearing on the motion in limine in which the circuit court heard testimony from two law enforcement officers and from Hub-bert, the trial court denied Hubbert’s request finding that Hubbert received extensive warnings of his Miranda rights and that there was no evidentiary rule prohibiting the State from putting into evidence the facts surrounding Hubbert’s refusal to submit to the residue testing.
¶ 4. At trial and over Hubbert’s objections, the State was permitted to question Officer Summers about Hubbert’s refusal to submit to the test. The State also made comments in its closing statements of Hub-bert’s unwillingness to acquiesce to the gunpowder residue test.
¶ 5. Subsequently, Hubbert was convicted and sentenced to life in prison. He appeals to this Court raising a single issue: Did the trial court err in overruling Appellant’s motion in limine and objection at trial to the introduction of Appellant’s refusal to submit to a gunpowder residue test after being advised that he had a constitutional right to refuse the test?
ANALYSIS
¶ 6. Hubbert argues on appeal that the prosecution’s use of his refusal to submit to the gunpowder residue test at trial was fundamentally unfair and deprived him of his Fourth Amendment right to due process and his Fifth Amendment right not to incriminate himself. Contending that the assertion of a constitutional privilege or right is not probative evidence for the jury to consider, Hubbert advances that he did not receive a fair trial because the prosecution was permitted to exploit his exercise of his right to refuse the test. In his argument, Hubbert relies primarily *506 on the United States Supreme Court case of Doyle v. State of Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The Doyle case established that the Due Process Clause of the Fourteenth Amendment prohibits a state from using a defendant’s post-Miranda silence to incriminate the defendant at trial. Id. at 617-18, 96 S.Ct. 2240. In Doyle, the defendants were given their Miranda warnings and thereafter remained silent. Id. At their respective trials, each gave an exculpatory story that they had not previously disclosed to the police or the prosecutor. Id. at 612-13, 96 S.Ct. 2240. Over defense objections, the defendants were cross-examined as to why they had not informed the arresting officer of then' exculpatory explanations. Id. at 614, 96 S.Ct. 2240. The Supreme Court held that the prosecutor’s impeachment of the defendants regarding their post-Miranda silence violated the Due Process Clause of the Fourteenth Amendment, ruling that it would be fundamentally unfair to permit an arrestee’s post -Miranda silence to be used to impeach an explanation given at trial after he had been impliedly guaranteed that he would not be penalized for his silence. Id. at 618, 96 S.Ct. 2240.
¶ 7. In response, the State argues that Hubbert misinterprets the Supreme Court’s holding in Doyle. Even further, the State asserts that “Hubbert had no right — constitutional or otherwise — to refuse to consent to the neutron activation test.” Given that there was probable cause to arrest Hubbert, the State argues that the gunpowder residue test was a search incident to a lawful arrest. The State further contends that the officers in question were justified in demanding that Hubbert submit to the test on the basis that it was evidence that would be lost or destroyed.
¶ 8. In support of its position, the State relies on Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). Cupp holds that, in the case of a search incident to arrest, the exception to the warrant requirement is founded upon the reasonable concern that the arrestee might possess a weapon or have one within reach, and that he may attempt to destroy evidence within his grasp. Cupp, 412 U.S. at 295, 93 S.Ct. 2000. In Cupp, it was determined that police who took samples of scrapings found under the defendant’s fingernails over his objections were justified in subjecting the defendant to “the very limited search necessary to preserve the highly evanescent evidence they found under his fingernails.” Id. at 296, 93 S.Ct. 2000. The U.S. Supreme Court noted that the defendant, “[tjhough he did not have the full warning of official suspicion that a formal arrest provides, ... was sufficiently apprised of his suspected role in the crime to motivate him to attempt to destroy what evidence he could without attracting further attention.” Id. Further, the Supreme Court stated: “the scope of a warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement.” Id. at 295, 93 S.Ct. 2000.
¶ 9. In addition, the State parallels the situation in this case to one in which police officers are authorized to perform a blood alcohol test when a driver has caused a fatal accident and is believed to be under the influence of alcohol. In Mississippi, if a defendant refuses to submit to a blood alcohol test, the fact that he refused is admissible at trial pursuant to section 63-11-41 of the Mississippi Code, as amended. There is no similar statute addressing the admissibility of a defendant’s refusal to submit to a gunpowder residue test. However, the State points us to Ricks v. State, 611 So.2d 212, 216 (Miss.1992), in which the Mississippi Supreme Court held that admitting evidence of defendant’s refusal to take breathalyzer was not a violation of Fifth Amendment prohibition against self-incrimination. Also, in Ricks, the supreme court stated: “The U.S. Supreme Court noted that most courts applying general Fifth Amendment principles to refusal to take a blood test have found no violation of the privilege against self-incrimination, *507 reasoning that refusal to submit is a physical act rather than a communication and for that reason is not protected by the privilege.” Ricks, 611 So.2d at 216 (citing South Dakota v. Neville, 459 U.S. 553, 561, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983)). Furthermore, the Ricks court concluded that the defendant’s “refusal being admitted into evidence against a defendant is just another attendant penalty to encourage defendants to take the test.” Ricks, 611 So.2d at 216 (citing South Dakota, 459 U.S. at 563, 103 S.Ct. 916).
¶ 10. The Mississippi Supreme Court has not previously considered this precise issue, that is, the admissibility of a defendant’s refusal to submit to a gunpowder test. In Porter v. State, 519 So.2d 1230, 1232 (Miss.1988), the Mississippi Supreme Court adopted the United States Supreme Court’s position that the Fifth Amendment only prohibited the compelled production of evidence, not evidence which identifies physical characteristics of the defendant. See also Brewer v. State, 725 So.2d 106, 130 (Miss.1998). The issue in Porter involved the question of whether the accused could be forced to exhibit a scar on his hand. Id. at 1231. The Mississippi Supreme Court determined that the exhibition of Porter’s hand was less intrusive than routine blood tests and fingerprints. Id. at 1232. In doing so, the Mississippi Supreme Court relied upon Schmerber v. California, 384 U.S. 757, 764-65, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), which upheld a state-compelled blood test, finding that a blood test was “physical or real” evidence rather than testimonial evidence, and therefore was unprotected by the Fifth Amendment privilege. Furthermore, the United States Supreme Court observed that the protection against self-incrimination did not encompass the “compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.” Id.
¶ 11. Evidence gathered by conducting a neutron activation test is analytically similar to cases in which evidence is collected through such tests and procedures as blood tests, breathalyzer tests, handwriting samples, voice exemplars and hair and saliva samples. In such cases, the evidence pursued is not testimonial in nature, and therefore does not fall within the scope Fifth Amendment. See McCrory v. State, 342 So.2d 897 (Miss.1977) (ruling that the State could compel defendant to provide handwriting exemplar without violating rule against self-incrimination); Martin v. State, 724 So.2d 420, 423 (Miss.Ct.App.1998) (ruling that a voice exemplar is not prohibited by Fifth Amendment); Burns v. State, 729 So.2d 203 (Miss.1998) (handwriting exemplar does not violate constitutional protections). It is clear that the State may force a defendant to provide blood, hair and saliva samples which may then be admitted into evidence against the defendant. See Williams v. State, 434 So.2d 1340, 1344-45 (Miss. 1983) (superced-ed by statute on other grounds); Wesley v. State, 521 So.2d 1283, 1286 (Miss.1988).
¶ 12. In Burns v. State, 729 So.2d 203, 216 (Miss.1998), the Mississippi Supreme Court addressed the issue of whether a defendant’s handwriting exemplar taken unbeknownst to the defendant violated the defendant’s Fourth and Fifth Amendment rights. Our supreme court relied on the United States Supreme Court’s opinion in United States v. Mara, 410 U.S. 19, 21, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), where it was held that “[hjandwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person’s script than there is in the tone of his voice.” The Mississippi Supreme Court concluded that Bums had no privacy interest in his handwriting and that the sample was obtained for the limited purpose of comparing it to an existing sample of the defendant’s writing. Burns, 729 So.2d at 216. Even further, the Mississippi Supreme Court decided that the officer who took the handwriting sample was under no *508 constitutional duty to inform the defendant why he needed the handwriting exemplar as the court recognized that the exemplars could have been obtained by court order. Id.
¶ 13. Burns also argued that the taking of a handwriting exemplar without first warning him of the fact that it may incriminate him forced him to be a witness against himself violating his Fifth Amendment right. Burns, 729 So.2d at 216. In finding that Burns’s Fifth Amendment rights were not violated, the Mississippi Supreme Court applied the reasoning of Gilbert v. California, 388 U.S. 268, 266-67, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). In Bums, the Mississippi Supreme Court quoted Gilbert as follows:
[t]he taking of exemplars did not violate petitioner’s Fifth Amendment privilege against self-incrimination. The privilege reaches only compulsion of ‘an accused’s communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one’s papers,’ and not ‘compulsion which makes a suspect or accused the source of ‘real or physical evidence.’ One’s voice and handwriting are, of course, means of communication within the cover of the privilege.
Burns, 729 So.2d at 216 (quoting Gilbert, 388 U.S. at 266, 87 S.Ct. 1951) (citations omitted). The court went on to say:
[T]his Court adopted the Supreme Court’s reasoning in Gilbert ... in Baylor v. State, 246 So.2d 516 (Miss.1971) finding “[t]he Fifth Amendment privilege against self-incrimination protects an accused from being compelled to testify against himself, that is, to provide evidence of a testimonial or communicative nature, but does not extend to the securing of real or physical evidence.”
Burns, 729 So.2d at 216 (emphasis added) (citation omitted).
¶ 14. One jurisdiction has dealt squarely with the issue before this Court today. In Commonwealth v. Monahan, 378 Pa.Super. 623, 549 A.2d 231 (1988), the Superior Court of Pennsylvania determined that the defendant’s refusal to submit to a neutron activation test was admissible. The court reasoned: “Statements of refusal to submit to reasonable physical evidence tests are admissible because they are the product of neither coercion nor interrogation .... ” Id. at 236. Consequently, the court surmised that such statements were not subject to the Fifth Amendment privilege. Id. Furthermore, the court concluded that the defendant’s Fourth Amendment due process rights were not violated as his refusal to participate in the test “raised a legitimate inference of his ‘consciousness of guilt’ whether or not the test could have established [his] guilt.” Id. at 237. In other words, the court found sufficient evidence that the defendant’s refusal pertained to his “consciousness of guilt” more than to mere speculation. Id.
¶ 15. Accordingly, we rule that the evidence sought to be obtained in this case was “real or physical” evidence. The officer, via a search warrant, could have compelled Hubbert to submit to the gunpowder residue test. Because the chemicals sought to be found on Hubbert’s hand could have been easily and quickly destroyed, the officers would have been within their rights to swab Hubbert’s hand even over his objections. See Cupp, 412 U.S. at 295, 93 S.Ct. 2000. We reject the State’s blanket statement that Hubbert had “no right — constitutional or otherwise” to refuse to participate in the test as the State, through its officers, gave Hubbert a choice. However, the State was not “constitutionally or otherwise” prohibited from informing the jury of Hubbert’s decision not to cooperate in submitting to the neutron activation test. Thus, we rule that the circuit court did not err in permitting the prosecution to make it known to the jury that Hubbert refused to consent to the test and that Hubbert’s constitutional rights to due process and not to incriminate himself were not violated.
*509 ¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO ATTALA COUNTY.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ, BRIDGES, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.