# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00182-COA

**OLIVER BROWN A/K/A OLIVER BROWN, JR.**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                        APPELLEE

DATE OF JUDGMENT:                11/26/2018
TRIAL JUDGE:                     HON. LAMAR PICKARD
COURT FROM WHICH APPEALED:       COPIAH COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         DENNIS C. SWEET III
                                 DENNIS CHARLES SWEET IV
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: LAURA HOGAN TEDDER
DISTRICT ATTORNEY:               ALEXANDER MARTIN
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 11/17/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Oliver Brown was convicted of manslaughter following a jury trial in the Copiah County Circuit Court.  On appeal, Brown argues (1) that the trial judge erred by admitting his confessions made to law enforcement; (2) that there is insufficient evidence to support his conviction; (3) that the trial judge committed plain error by giving erroneous and inadequate instructions on the crime of heat-of-passion manslaughter; and (4) that the State committed a *Brady*[1] violation.  We find no reversible error and affirm.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

## FACTS AND PROCEDURAL HISTORY

¶2. On August 12, 2017, Jason Youngblood was driving in his car with Frederick Shannon. As they drove past Oliver Brown's house on Beasley Road in Hazlehurst, Youngblood saw a garbage bin that he thought belonged to him. Youngblood turned his car around and parked on the road in front of Brown's house.

¶3. Youngblood walked up to the house while Shannon remained in the car. Youngblood knocked on the front door, and Brown's wife, Dara, came to the door. Youngblood told Dara that they had his garbage bin. Dara told him that the garbage bin was theirs, but Youngblood insisted that it belonged to him. Dara told Youngblood that she would call Brown about the bin. Dara called Brown, and Brown "told [Dara] to tell [Youngblood] that [Youngblood's] bin [was] gone." He also told Dara, "Tell [Youngblood] I bought that bin from Kenny Beacham." Brown then told Dara to just stay inside the house. He stated that he was on his way home and would talk to Youngblood himself. Dara told Youngblood that Brown would be home soon, and Youngblood said he would wait in his car. Dara testified that Youngblood was angry and cursing and "looked like he was maybe a little high or something."

¶4. Youngblood walked back to the road and sat down in his car. About that time, Brown drove up in his truck and parked directly in front of and facing Youngblood's car. Shannon testified that Youngblood got out of his car and walked back to the rear of his car. Brown then got out of his truck and walked past Shannon to meet Youngblood at the rear of Youngblood's car.

2

¶5. Shannon, who was still sitting in the passenger seat of Youngblood's car, heard Brown "hollering and screaming" at Youngblood "to get away from the front of his house." Shannon could not hear what Youngblood said because Youngblood was not talking loudly. Dara was standing at the front door of the house. Shannon heard Dara scream, "No, Little Oliver," followed immediately by a gunshot. Shannon got out of the car, and Brown said to him, "Well, you can get it too." Shannon saw Youngblood lying in the road. He said to Brown, "Man, I didn't have nothing to do with this. I didn't come here for that." Brown told Shannon to get Youngblood "away from in front of [Brown's] house." Shannon responded, "Man, he's dead, bro." Brown then got in his truck and drove off. Shannon did not have a phone to call anyone, so he drove Youngblood's car to Youngblood's cousin's house. Shannon did not see a gun at any time prior to, during, or after the shooting.

¶6. Dara's testimony about the shooting differed from Shannon's testimony. Dara testified that Brown parked his truck in their driveway and started walking toward their house. She testified that Youngblood got out of his car and "kind of cut [Brown] off" in their yard and that the two men began arguing about the garbage bin. Youngblood claimed that it belonged to him, while Brown insisted that it was his. According to Dara, Youngblood became "irate" and began to insult and curse Brown. She testified that Brown told her to go back in the house and told Youngblood to get out of their yard. Dara testified that as she went back inside the house, she heard a gunshot. She looked back and saw Youngblood fall to the ground and Brown "jump back like he was looking at himself." Dara claimed that Brown and Youngblood were in the yard when she turned to go back inside the house. She

3

did not know how they ended up in the road before Youngblood was shot. After Youngblood was shot, Dara called 911, and Brown got in his truck and left. Dara also testified that she never saw either man with a gun.

¶7. Dara testified that after Brown left, Shannon stepped out of Youngblood's car and stated, "I told [Youngblood] not to come over here and start messing with y'all about a garbage bin." Dara was surprised because she had not known that anyone else was in Youngblood's car. She testified that Shannon checked on Youngblood and then said that he needed to go because he was "already on papers."

¶8. On cross-examination, Dara acknowledged that she later told police officers, "I didn't see [Brown] actually pull a gun. If I had, I would have told him, 'Don't shoot the boy.'" Dara testified that she called 911 twice because her first call was disconnected. In between the two calls, Brown called her, and she was concerned because he seemed "delusional." During the second 911 call, she told the operator, "I just pray he [(i.e., Brown)] don't do nothing else." When police officers responded to the scene, Dara did not tell them that Brown and Youngblood had struggled prior to the shooting or that she was ever in fear of Youngblood. The gun used to kill Youngblood was never found.

¶9. Dr. Mark LeVaughn, the chief medical examiner for the State, performed the autopsy and testified that Youngblood died of a single gunshot wound to his face. The bullet entered Youngblood's face just over his chin, severed his brainstem, and stopped in the back of his skull. LeVaughn testified that the shooter was standing directly in front of Youngblood and that the wound was a "close-range wound," meaning that the gun's muzzle was two to four

4

feet from Youngblood's face. Youngblood's only injury was the single gunshot wound. He did not have any injuries that suggested there was a struggle prior to the shooting. On cross-examination, LeVaughn testified that Youngblood's blood alcohol concentration was .13% and that marijuana was present in his system at the time of his death.

¶10.    Brown turned himself in at the Hazlehurst Police Department later on the day of the shooting. He was taken to an interview room and given a *Miranda*[2] warning. Brown asked for a lawyer, and questioning ceased. Brown was sent to the booking area of the jail. A short time later, Brown was called back to the interview room, and Investigator Al Farrish asked him if he would consent to a gunshot residue (GSR) test. In response, Brown stated that there no need to waste time and money on a GSR test because he shot Youngblood. Brown stated, "[I] killed the mother f****r."[3]

¶11.    Two days later, Officer Reginald Robinson transported Brown to court for his initial appearance in Brookhaven. Robinson had known Brown "[j]ust about all [his] life," and on the way back to the jail, they engaged in casual conversation about their families and "old times." During their conversation, Brown spontaneously told Robinson that he shot Youngblood with a "revolver" and "got rid of it before [he] turned [him]self in."

¶12.    A Copiah County grand jury indicted Brown as a violent habitual offender[4] for first-

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Farrish and Assistant Police Chief Darian Murray testified about Brown's statement at a pretrial suppression hearing. Murray testified at trial.

[4] *See* Miss. Code Ann. § 99-19-83 (Rev. 2015). Brown had prior convictions for aggravated assault and burglary of a dwelling.

degree murder and possession of a firearm by a felon. Prior to trial, Brown filed a motion to suppress his confessions to Farrish and Robinson. Following a pretrial hearing, the trial judge denied the motion.

¶13. In his opening statement at trial, Brown's counsel argued that "Youngblood walked up on . . . Brown, reached in his pocket and pulled out a gun." Counsel argued that Brown grabbed the gun, and "[a]s they tussled over the gun, the gun went off" and shot Youngblood. Counsel claimed that a GSR analysis of Youngblood's hands supported this theory.

¶14. Jason Burchfield, an analyst from the Mississippi Forensics Laboratory, testified that Youngblood's GSR test was negative as to his right palm, left palm, and the back of his right hand. There were "particles indicative of gunshot residue . . . present on the back of [Youngblood's] left hand." This meant that Youngblood was "in the environment of a discharged weapon," probably "within two to three feet" of the discharged weapon. On cross-examination, Burchfield testified that particles could have ended up on the back of Youngblood's left hand even if Youngblood's hands were down at his side when Brown shot him in the face.[5]

¶15. On the first count of the indictment, the court instructed the jury on first-degree murder, the lesser-included offense of heat-of-passion manslaughter, and the justification of self-defense. The jury found Brown guilty of manslaughter and not guilty of possession of a firearm as a felon. The court sentenced Brown to life imprisonment without eligibility for

---

[5] In his opening statement, defense counsel had also implied that Shannon picked up Youngblood's gun and took it with him when he left. However, Burchfield testified that a GSR test of Shannon's hands was negative as to the palms and backs of both hands.

parole as a violent habitual offender.

¶16.    Brown filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.  On appeal, Brown alleges (1) that the trial judge erred by admitting his confessions; (2) that there is insufficient evidence to support his conviction; (3) that the trial judge committed plain error by giving erroneous and inadequate manslaughter instructions; and (4) that the State committed a *Brady* violation.

## ANALYSIS

### I.    Brown's confessions were properly admitted.

¶17.    Brown first argues that his confessions to police should have been excluded because they were obtained after he had invoked his right to counsel.  Following a pretrial hearing, the trial judge found that Brown's confessions were voluntary and were not the product of custodial interrogation.  Therefore, the judge denied Brown's motion to suppress.

¶18.    "Where a trial judge finds at a preliminary hearing that a confession is admissible, the defendant/appellant has a heavy burden in attempting to reverse that decision on appeal." *Chim v. State*, 972 So. 2d 601, 607 (¶20) (Miss. 2008) (quotation marks omitted).  We will not reverse the trial judge's findings of fact unless they are "manifestly wrong or contrary to the overwhelming weight of the evidence." *Id.* (ellipsis omitted).  We review any issues of law de novo. *Delashmit v. State*, 991 So. 2d 1215, 1218 (¶9) (Miss. 2008).

¶19.    Once an accused invokes his right to counsel, the "accused . . . is not subject to further *interrogation* by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the

police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (emphasis added). "[T]he term 'interrogation' . . . refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnote omitted). In this case, Brown's confessions were properly admitted because neither was the product of "further interrogation by the authorities." *Edwards*, 451 U.S. at 484.

¶20. Brown first confessed after Farrish asked him for consent to a GSR test. In *Hubbert v. State*, 759 So. 2d 504 (Miss. Ct. App. 2000), this Court reasoned that an officer's request that the defendant submit to a GSR test was not an "interrogation." *Id.* at 508 (¶¶14-15) (quoting *Commonwealth v. Monahan*, 549 A.2d 231, 236 (Pa. Super. Ct. 1988)). In addition, in *Smith v. State*, 942 So. 2d 308 (Miss. Ct. App. 2006), we held that an officer's "request for and taking of a blood sample cannot be considered custodial interrogation under the law." *Id.* at 320 (¶33). Similarly, Farrish only asked Brown for consent to a GSR test. We cannot say that Farrish should have anticipated that his simple request for physical evidence was "reasonably likely to elicit an incriminating response from [Brown]." *Innis*, 446 U.S. at 301 (footnote omitted). Therefore, Farrish did not "interrogate" Brown or violate his right to counsel, and Brown's confession to Farrish was properly admitted at trial.

¶21. Brown later confessed to Robinson while they made small talk about their families and "old times" during the car ride back to the jail from Brown's preliminary hearing. Ordinary small talk or polite conversation is not "interrogation." *See, e.g.*, *Mickey v. Ayers*,

606 F.3d 1223, 1235 (9th Cir. 2010) (holding that "small talk" and "casual conversation" was not interrogation); *United States v. Tail*, 459 F.3d 854, 858 (8th Cir. 2006) ("Polite conversation is not the functional equivalent of interrogation."). Again, there is no evidence that Robinson said or did anything that was "reasonably likely to elicit an incriminating response from [Brown]." *Innis*, 446 U.S. at 301 (footnote omitted).[6] Accordingly, Robinson also did not interrogate Brown or violate his right to counsel, and Brown's confession to Robinson was also properly admitted at trial.

## II.    The State presented sufficient evidence to convict Brown.

¶22.    On appeal, Brown argues that the State presented insufficient evidence to convict him of manslaughter. Brown's argument hinges entirely on the jury's verdict finding him not guilty of possession of a firearm as a felon. Brown observes that "[i]t is undisputed that Youngblood died as a result of a gunshot wound to his head." Brown then emphasizes that "the jury acquitted [him] of possessing a firearm." Brown argues that the jury's verdicts are inconsistent and "cannot be reconciled." He argues that after finding that he did not possess a firearm, the jury could not have found that he used a firearm to kill Youngblood, i.e., to commit manslaughter.

¶23.    Brown's argument is without merit. "Inconsistent verdicts are permissible" and are not a ground for reversal. *Culp v. State*, 933 So. 2d 264, 280 (¶51) (Miss. 2005). On this issue, the Mississippi Supreme Court has adopted the reasoning of the United States Supreme Court, which held:

---

[6] Brown did not testify at his suppression hearing, so the police officers' versions of his two confessions are uncontradicted.

Inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal[.]

Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

[T]here is no reason to vacate the [defendant's] conviction merely because the verdicts cannot rationally be reconciled. [The defendant] is given the benefit of her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of her conviction on the counts on which the jury convicted.

*Id.* at 279 (¶47) (quoting *Holloman v. State*, 656 So. 2d 1134, 1141 (Miss. 1995) (quoting *United States v. Powell*, 469 U.S. 57, 65 (1984))).

¶24. Thus, the fact that the jury acquitted Brown of possession of a firearm is not, in and of itself, grounds for reversing his conviction. Yet that is the only challenge to the evidence that Brown advances on appeal—he does not challenge the State's proof on any other ground. We conclude that there was sufficient evidence for a rational jury to find that Brown drew his gun and deliberately shot Youngblood in the face and that Brown did not act in necessary self-defense.[7] On the evidence presented, a rational jury could have found Brown

_____

[7] "When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017). "We are not required to decide—and in fact we must refrain

guilty of murder. It necessarily follows that there is sufficient evidence to sustain his conviction on the lesser-included offense of manslaughter. *See McCarty v. State*, 247 So. 3d 260, 267 (¶20) (Miss. Ct. App. 2017).

> ### III. Brown did not object to Jury Instruction No. 5 on murder and manslaughter, and the trial judge did not commit plain error by giving the instruction.

¶25. In Jury Instruction No. 5, the trial judge instructed the jury on murder and manslaughter as follows:

> The Court instructs the Jury that every intentional killing of a human being without authority of law and not in reasonable self-defense, is either Murder or Manslaughter; Murder when done with malice aforethought, and with a deliberate design to effect the death of the person killed and Manslaughter when done without malice aforethought in the heat of passion and not in reasonable self-defense. If you find from the evidence in this case beyond a reasonable doubt that:

> (1) On or about the 12th day of August, 2017, in Copiah County, Mississippi;

> (2) the defendant, Oliver Brown, Jr., did willfully and with a deliberate design to effect the death of Jason Youngblood;

> (3) kill Jason Youngblood;

> (4) a human being;

> (5) and was not acting in reasonable self-defense,

> then you shall find Oliver Brown, Jr. guilty of First Degree Murder as to Count One.

> If you find from the evidence in this case beyond a reasonable doubt

---

from deciding—whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010).

that:

> (1) On or about the 12th day of August, 2017, in Copiah County, Mississippi;

> (2) the defendant, Oliver Brown, Jr., willfully killed Jason Youngblood;

> (3) a human being;

> (4) without malice and in the heat of passion;

> (5) and was not acting in reasonable self-defense,

then you shall find the Oliver Brown, Jr. guilty of Manslaughter as to Count One.

> If the prosecution has failed to prove any one or more of the above listed elements of First Degree Murder and/or Manslaughter beyond a reasonable doubt, then you shall find Oliver Brown, Jr. not guilty as to Count One.

¶26. On appeal, Brown argues that this instruction was erroneous or inadequate because it (1) used the word "willfully" in the second element of manslaughter, (2) failed to define "heat of passion," and (3) omitted an element of heat-of-passion manslaughter—namely, that the killing was done "in a cruel or unusual manner, or by the use of a dangerous weapon," Miss. Code Ann. § 97-3-35 (Rev. 2014). However, Brown did not object to this instruction at trial. The failure to object to a jury instruction at trial waives the issue on appeal, and "the issue is barred from review absent plain error." *Willie v. State*, 204 So. 3d 1268, 1278 (¶28) (Miss. 2016). As the Supreme Court has explained,

> We apply the plain-error rule only if a defendant's substantive or fundamental rights are affected. Applying the plain-error rule, the Court must determine: (1) whether the trial court deviated from a legal rule; (2) whether the error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial. Only if the error resulted in a manifest miscarriage of justice will

reversal occur.

*Id.* at 1279 (¶29) (citations and quotation marks omitted). For the reasons that follow, we find no reversible "plain error" in Jury Instruction No. 5.

### A.    "willfully"

¶27.    Brown argues that it was error to include the word "willfully" in the second element of manslaughter because that word does not appear in the heat-of-passion manslaughter statute, Miss. Code Ann. § 97-3-35. This argument fails because the use of the word "willfully" was not error—much less a "plain, clear, or obvious" error. *Willie*, 204 So. 3d at 1279 (¶29). In addition, the error did not affect "the outcome of the trial" or "result[] in a manifest miscarriage of justice." *Id.*

¶28.    To begin with, use of the term "willfully" was not error. Jury instructions that define heat-of-passion manslaughter as a willful killing have been given in numerous reported cases, and there has never been any suggestion that such instructions are erroneous.[8] "Wilfully" simply means "intentionally."[9] Heat-of-passion manslaughter is an intentional

---

[8] *See, e.g.*, *Moore v. State*, 52 So. 3d 339, 344 (¶20) (Miss. 2010); *Lee v. State*, 858 So. 2d 124, 127 (¶9) (Miss. 2003); *Russell v. State*, 789 So. 2d 779, 781-82 (¶10) (Miss. 2001); *Walker v. State*, 671 So. 2d 581, 596-97 (Miss. 1995); *Gossett v. State*, 660 So. 2d 1285, 1295 n.1 (Miss. 1995); *Buchanan v. State*, 567 So. 2d 194, 197 (Miss. 1990); *Cook v. State*, 467 So. 2d 203, 206-07 (Miss. 1985); *Carter v. State*, 169 Miss. 285, 152 So. 876, 877 (1934); *Cooper v. State*, 230 So. 3d 1071, 1080-81 (¶¶31, 33) (Miss. Ct. App. 2017); *Holmes v. State*, 201 So. 3d 491, 494 n.3 (Miss. Ct. App. 2015); *Sacus v. State*, 956 So. 2d 329, 334 (¶14) (Miss. Ct. App. 2007); *Pritchett v. State*, 744 So. 2d 326, 332 (¶35) (Miss. Ct. App. 1999).

[9] *E.g.*, *Greenleaf v. State*, 267 So. 3d 749, 752 (¶13) (Miss. 2019); *Boyd v. State*, 977 So. 2d 329, 335 (¶22) (Miss. 2008); *Lester v. State*, 692 So. 2d 755, 789-90 (Miss. 1997); *Moore v. State*, 676 So. 2d 244, 246 (Miss. 1996) ("'[W]ilful' means nothing more than doing an act intentionally.").

homicide that is reduced from murder to manslaughter because it was committed in the heat of a sudden passion caused by some sufficient provocation or injury.[10]  Indeed, the United States Court of Appeals for the Fifth Circuit has held that our heat-of-passion manslaughter statute "requires the killing be willful" and that a conviction for heat-of-passion manslaughter "conclusively establishes that [the defendant] willfully and intentionally killed [the victim]." *Capital City Ins. v. Hurst*, 632 F.3d 898, 905-06 (5th Cir. 2011); *accord Blanden v. State*, 276 So. 3d 1204, 1210 (¶24) (Miss. Ct. App. 2018) (citing *Capital City* with approval). Accordingly, Jury Instruction No. 5's use of the term "willfully" was not error.

¶29.     Moreover, even if the instruction's use of the word was "error," we could not possibly say that it was a "plain, clear, or obvious" error.  *Willie*, 204 So. 3d at 1279 (¶29).  In *Green v. State*, 183 So. 3d 28 (Miss. 2016), our Supreme Court held that a trial court did not commit "plain error" by treating each possession of a firearm as a separate crime under the felon-in-possession statute given that a number of reported decisions had discussed "convictions on multiple counts without ever before finding or considering error—plain or otherwise." *Id.* at 31 (¶7).  In light of those prior cases and the absence of "any binding

---

[10] *See Windham v. State*, 520 So. 2d 123, 127 (Miss. 1987) ("A person may form an intent to kill from a sudden passion induced by insult, provocation or injury from another. In that moment of passion, while still enraged, if he slays the other person, the homicide may be manslaughter, even though it is not in necessary self-defense, depending upon the insult, provocation or injury causing the anger."); *Brown v. State*, 768 So. 2d 312, 318 (¶20) (Miss. Ct. App. 1999) ("A killing even though intentional, committed on impulse in the heat of passion is without deliberation and without malice aforethought." (quoting *Williams v. State*, 729 So. 2d 1181, 1183 (Miss. 1998))); *see also* 3 Wayne R. LaFave, *Substantive Criminal Law* § 15.2 (3d ed. 2016) (stating that "in most jurisdictions" heat-of-passion manslaughter "consists of an intentional homicide committed under extenuating circumstances which mitigate, though they do not justify or excuse, the killing").

authority settling the issue," the Supreme Court reasoned that there was "no standing authority or clear legal rule" for a trial court to follow. *Id.* at 32 (¶9). And in the absence of a clear legal rule, there can be no "plain error." *See id.* at (¶10).

¶30. Likewise in this case, jury instructions using the term "willfully" have been given in numerous prior cases without any suggestion of "error—plain or otherwise." *Id.* at 31 (¶7). Moreover, there is no "binding authority" or "clear legal rule" disapproving of such an instruction. *Id.* at 32 (¶9). Therefore, the instruction cannot be "plain error." *Id.*

¶31. Finally, the plain-error doctrine is inapplicable in this case because Brown cannot show that the instruction prejudiced his defense or "resulted in a manifest miscarriage of justice." *Willie*, 204 So. 3d at 1279 (¶29). The inclusion of the word "willfully" in the instruction only increased the State's burden by requiring it to prove willfulness. Thus, the alleged error was clearly harmless.

### B. "heat of passion"

¶32. Brown also argues that the trial judge committed plain error by not sua sponte giving an instruction defining the phrase "heat of passion." However, Brown did not request such an instruction, and he "points to no Mississippi authority requiring a judge to sua sponte define heat of passion when no definitional instruction is requested by the defendant. Nor does he point to Mississippi authority that the specific failure to define heat of passion is reversible error." *Bernard v. State*, 288 So. 3d 301, 312 (¶41) (Miss. 2019) (rejecting the exact same argument). This argument is without merit.

### C. "by the use of a dangerous weapon"

¶33. Finally, Brown argues that Jury Instruction No. 5 erroneously omitted language from the heat-of-passion manslaughter statute that requires the State to prove that the killing was committed either "in a cruel or unusual manner, or by the use of a dangerous weapon." Miss. Code Ann. § 97-3-35. We agree with Brown that this omission was error. Indeed, based on the plain language of the statute, it was a clear and obvious error. However, because Brown failed to object to Jury Instruction No. 5 at trial, we will not reverse unless Brown can demonstrate that "the error prejudiced the outcome of the trial" and "resulted in a manifest miscarriage of justice." *Willie*, 204 So. 3d at 1279 (¶29). Based on prior decisions of our Supreme Court, we conclude that the error was harmless.

¶34. We begin our analysis by acknowledging that the heat-of-passion manslaughter statute does require the State to prove that the killing was committed either "in a cruel or unusual manner, or by the use of a dangerous weapon." Miss. Code Ann. § 97-3-35. In this case, the alternative that applies is "by the use of a dangerous weapon," for there is no dispute that Youngblood was killed with a gun. Jury Instruction No. 5's omission of this phrase was a clear error, although no party brought it to the trial judge's attention.

¶35. Nonetheless, prior cases demonstrate that this omission can be—and, in this case, was—harmless. In *Robinson v. State*, 223 Miss. 303, 309, 78 So. 2d 134, 136 (1955), our Supreme Court held that the omission of the same phrase from the jury instruction on heat-of-passion manslaughter was "harmless" because the evidence was uncontradicted that the victim died as the result of a gunshot wound. The Supreme Court reached the same result in *Kelly v. State*, 463 So. 2d 1070, 1074 (Miss. 1985), because there was again no dispute

that the victim died from a gunshot wound.

¶36. This case is no different. The jury found beyond a reasonable doubt that Brown killed Youngblood willfully, in the heat of passion, and not in necessary self-defense. In addition, as Brown acknowledges on appeal, "[i]t is undisputed that Youngblood died as a result of a gunshot wound to his head." In other words, it is clear and undisputed that Youngblood was killed "by the use of a dangerous weapon." *See Flynt v. State*, 183 So. 3d 1, 9 (¶27) (Miss. 2015) ("[C]ertainly, a gun is a 'dangerous weapon'" within the meaning of the heat-of-passion manslaughter statute.). No rational jury could reach any other conclusion. Therefore, consistent with the Supreme Court's decisions in *Robinson* and *Kelly*, we hold that the omission of that language from the jury instruction was harmless, and Brown's conviction must be affirmed.

¶37. We acknowledge that in more recent cases our Supreme Court has stated that a jury instruction's omission of an element of an offense is not subject to harmless-error analysis. *See Harrell v. State*, 134 So. 3d 266, 275 (¶30) (Miss. 2014). However, we will continue to follow the Supreme Court's directly on-point decisions in *Robinson* and *Kelly* until the Supreme Court itself has overruled those decisions. *Cf. Rodriguez de Quijas v. Shearson/Am. Express Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *see also e.g.*, *Hudson v. WLOX Inc.*, 108 So. 3d 429, 432 (¶10) (Miss. Ct. App. 2012) ("[T]his court lacks authority to overrule Mississippi

17

Supreme Court precedent.").

¶38.     Moreover, as stated above, the Supreme Court has repeatedly stated that reversal based on the plain-error doctrine is appropriate only in the case of a clear error that "prejudiced the outcome of the trial" and "resulted in a manifest miscarriage of justice." *Willie*, 204 So. 3d at 1279 (¶29).  In this case, Jury Instruction No. 5 was given without objection, and the omission in the instruction had no conceivable practical effect on the jury's verdict.  Therefore, we cannot say that the error affected the outcome of the trial or caused a manifest miscarriage of justice.

### IV.     There was no *Brady* violation.

¶39.     In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  *Brady*'s disclosure requirement applies not only to substantive exculpatory evidence but also to impeachment evidence.  *United States v. Bagley*, 473 U.S. 667, 676 (1985).  To establish a *Brady* violation, the defendant must prove that (1) the State possessed material evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not have obtained it by reasonable diligence; (3) the State suppressed the evidence; and (4) there is a reasonable probability that the result of the trial would have been different if the evidence had been disclosed.  *Howell v. State*, 163 So. 3d 240, 250 (¶18) (Miss. 2014).

¶40.     Brown asserts that the State committed a *Brady* violation in this case by failing to

disclose that Investigator Al Farrish became romantically involved with Dara during the investigation or trial.[11] Brown raised this issue in a post-trial motion, and Farrish and Dara testified at a post-trial hearing. Based on the evidence presented, the circuit judge[12] found that the claim was without merit.

¶41. Farrish and Dara both testified that they did not become romantically involved until after Brown's trial in August 2018. Dara posted bond for Brown, helped to pay for his defense, and testified as a defense witness at trial. She testified that after Brown was found guilty, "another one of [Brown's] adulterous relationships was brought to [her] attention,"[13] and she decided she was "completely done" with the marriage and wanted a divorce. In September 2018, she had a co-worker call the police chief to ask Farrish to contact her. Dara and Farrish knew one another "because Hazlehurst is small," but did not know one another well and had never dated. They became romantically involved in September 2018.

¶42. The circuit judge found that there was no *Brady* violation because there was no relationship and therefore nothing that the State could have disclosed prior to Brown's trial and conviction. The record supports the circuit judge's finding. Therefore, we affirm the

---

[11] As noted above, Farrish testified at a pretrial suppression hearing but did not testify at trial.

[12] By the time of the post-trial hearing, the trial judge had retired and a new circuit judge had taken office.

[13] She testified that she and Brown "had already gone through numerous issues of him being involved in [prior] adulterous relationships."

circuit judge's finding that there was no *Brady* violation.[14]

**CONCLUSION**

¶43. Brown's voluntary confessions were properly admitted at trial, there is sufficient evidence to support the conviction, and there is no evidence that the State committed a *Brady* violation. Jury Instruction No. 5 erroneously omitted the phrase "by the use of a dangerous weapon." However, Brown did not raise this issue or assert any objection to the instruction at trial. Furthermore, the omission was harmless because it was undisputed that Youngblood was killed with a dangerous weapon. "A defendant is entitled to a fair trial but not a perfect one, for there are no perfect trials." *Brown v. United States*, 411 U.S. 223, 231-32 (1973) (parentheses and quotation marks omitted). Brown received a fair trial, and there is sufficient evidence to support the jury's verdict finding him guilty beyond a reasonable doubt.

¶44. **AFFIRMED.**

**CARLTON, P.J., GREENLEE AND LAWRENCE, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McCARTY, JJ. BARNES, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, McDONALD AND McCARTY, JJ.**

**McDONALD, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶45. I agree with the majority that Brown's confession was admissible and that there was no *Brady* violation in this case. But I concur with Judge Barnes's dissent and would reverse Brown's conviction for an additional defect in the jury instruction on the elements of the

---

[14] Brown also argues that his conviction should be reversed based on the "cumulative error doctrine." This argument fails because we have identified only one harmless error. *See Page v. State*, 269 So. 3d 440, 455 n.13 (Miss. Ct. App. 2018); *Keys v. State*, 219 So. 3d 559, 568 n.8 (Miss. Ct. App. 2017).

Brown's alleged crimes.

¶46.    The State's proposed instruction S-1 that the circuit court granted as Jury Instruction No. 5 is a composite instruction that included the elements of all the crimes alleged in Brown's indictment, including murder and manslaughter.[15]  It was the only instruction given to the jury on the elements of manslaughter, and Brown did not propose an alternative.  No other instructions were given defining any terms used in Jury Instruction No. 5.

¶47.    Although given the opportunity to make objections on the record, Brown's counsel made no substantive challenge to Jury Instruction No. 5.  But on appeal, Brown argues that Jury Instruction No. 5 omitted a necessary element (i.e., "in a cruel or unusual manner or by the use of a dangerous weapon") and that it improperly required the jury to find Brown's conduct to be willful or intentional even for manslaughter.  He also argues on appeal that the State failed to offer an instruction that defined "heat of passion."

¶48.    I agree with the majority that because Brown did not present these objections to the circuit court, his challenges could be procedurally barred from review on appeal.  But if a defendant's substantive or fundamental rights are affected, we may address an issue under the "plain-error rule."  *Chatman v. State*, 241 So. 3d 649, 653 (¶12) (Miss. Ct. App. 2017).  In *Chatman,* the analysis was described as follows:

> [I]n applying the plain-error rule, we determine: "(1) whether the trial court deviated from a legal rule; (2) whether the error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial."  We will only reverse if the error "resulted in a manifest miscarriage of justice."

---

[15] The given instruction also included the instruction on the elements of the crime of possession of a firearm by a felon, which is not at issue.

21

*Id.* (quoting *Willie v. State*, 204 So. 3d 1268, 1279 (¶29) (Miss. 2016)).

¶49.    "We apply the plain-error rule only if a defendant's substantive or fundamental rights are affected." *Willie*, 204 So. 3d at 1279 (¶29) (internal quotation mark omitted).  In this case Brown had a fundamental due-process right to a properly instructed jury.  *See Blunt v. State*, 55 So. 3d 207, 211 (¶16) (Miss. Ct. App. 2011); *Shaffer v. State*, 740 So. 2d 273, 282 (¶¶31-33) (Miss. 1998), *abrogated on other grounds by Kolberg v. State*, 829 So. 2d 29, 50 (¶40) (Miss. 2002), *overruled by Harrell v. State*, 134 So. 3d 266, 275 (¶30) (Miss. 2014).  A trial court is responsible for assuring that the jury is "fully and properly instructed on all issues of law relevant to the case."  *Harrell*, 134 So. 3d at 270 (¶14).  "Failure to submit to the jury the essential elements of the crime is 'fundamental' error."  *Hunter v. State*, 684 So. 2d 625, 636 (Miss. 1996), *abrogated on other grounds by Kolberg*, 829 So. 2d at 50 (¶40), *overruled by Harrell*, 134 So. 3d at 275 (¶30).  Accordingly, Brown is entitled to a review of his challenges for plain error, as even the majority seems to agree.  But I disagree with the majority in its analysis and conclusions concerning the elements-instruction given.

¶50.    Because we are dealing with an improper jury instruction on the elements of a crime, we are not bound to the confines of the tripartite analysis that the majority uses to find plain error.  Recently, in *Hodges v. State*, 285 So. 3d 711 (Miss. Ct. App. 2019), when the jury instruction did not contain each element of the crime charged, we did not use the traditional three-part plain error analysis.  In that case, Hodges was charged with two counts of manslaughter relating to the ownership of dangerous animals.  *Id*. at 718 (¶29).  During the conference on jury instructions, Hodges's attorney did not object to the State's instruction,

22

counsel withdrew Hodges's proposed instruction, and the instruction was given after agreement of the parties. *Id*. at (¶30). The instruction failed to contain an essential element of the crime, namely, that Hodges owned his dogs "knowing their propensity for mischievousness/dangerousness." *Id.* On appeal Hodges acknowledged his failure to object to the instruction, and the State argued he was thus procedurally barred from challenging it. *Id*. at 719 (¶35). But we found plain error because the instruction failed to include an essential element of the crime. *Id*. at 722 (¶42). We cited numerous cases where plain error has previously been found when a jury is not properly instructed on the elements of a crime, including *Pollard v. State*, 932 So. 2d 82, 87 (¶11) (Miss. Ct. App. 2006) ("The trial court committed plain error by adopting an instruction that did not fully instruct the jury on the elements of the crime; thus, the procedural bar based upon counsel's failure to object does not apply."), and *Bolton v. State*, 113 So. 3d 542, 544 (¶4) (Miss. 2013) ("The failure to instruct the jury on the essential elements of the crime is plain error."). *Hodges*, 285 So. 3d at 720 (¶36). We concluded:

> Nor will we engage in a harmless error analysis. In *Harrell v. State*, 134 So. 3d 266, 271 (¶18) (Miss. 2014), the supreme court expressly rejected the idea that "appellate courts [may] engage in harmless error analysis when the trial courts fail to instruct juries as to the elements of the crime charged." Instead, the supreme court held in Harrell "that it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element." *Id.* at 275 (¶30). We therefore reverse and remand for a new trial on this issue. *Bolton*, 113 So. 3d at 544 (¶4).

*Id.* at 722 (¶42). Our reversal in *Hodges* was unanimous.

¶51. In general, the overall goal of jury instructions is to "fairly . . . announce the law."

23

*Hawkins v. State*, 101 So. 3d 638, 643 (¶16) (Miss. 2012). In this case, the sole composite instruction did not. Brown was indicted for murder under Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2014), which defines murder as:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
>
>> (a) When done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder[.]

The elements of manslaughter, a lesser-included offense, are found in Mississippi Code Annotated section 97-3-35 (Rev. 2014) as follows:

> The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.

¶52. Comparing the wording of the instruction given in this case to the wording of the statute, it is clear that the jury was incorrectly instructed on the elements of manslaughter. The instruction failed to include the manner of the death, either "in a cruel or unusual manner," or "by use of a dangerous weapon." The majority does find this omission to be error, even clear and obvious error, but yet harmless error. I disagree and join in Judge Barnes's dissent on this issue. I would add that the instruction erroneously included in the definition of manslaughter that the jury find that Brown "wilfully" killed Youngblood. Combining these two errors is further reason to reverse and remand this case.

¶53. The currently proposed Mississippi Model Jury Instructions do not include the element of wilfulness in its proposed instruction on heat-of-passion manslaughter:

> [Name of Defendant] is charged in count ___ with manslaughter.

24

If you find beyond a reasonable doubt from the evidence in this case that:

1. On or about [date of alleged crime], in _____ County;

2. [Name of defendant] unlawfully and without deliberate design killed [name of victim], a human being in the heat of passion:
    A. In a cruel or unusual manner by _____ [describe defendant's alleged actions]; or
    B. By using a deadly weapon to _____ [describe defendant's alleged actions]; and

3. [Name of defendant] was not acting in self-defense, then you shall find [name of defendant] guilty as charged.

    If the State did not prove any one of the above listed elements beyond a reasonable doubt, then you shall find [name of defendant] not guilty of count ____.

Proposed Mississippi Model Jury Instructions (Criminal) ch. 27(D), 2724 (2012) (unadopted). A manslaughter instruction, which followed the wording of the Model Jury Instruction, is found in *Bernard v. State*, 288 So. 3d 301, 308 n.7 (Miss. 2019). That instruction read:

If you find from the evidence in the case beyond a reasonable doubt that Willie Bernard on about the 16th day of March 2011 in the First Judicial District of Hinds County, Mississippi did kill Larry Johnson without malice in the heat of passion by shooting him with a handgun without authority of law and not in necessary self-defense, then you shall find Willie Bernard guilty of manslaughter.

If the prosecution has failed [to prove] any one or more of the above listed elements beyond a reasonable doubt, then you shall find Willie Bernard not guilty of manslaughter.

Unlike the instruction in *Bernard*, Brown's instruction clearly added the "willfulness" element to the manslaughter instruction.

¶54. To be clear, I am not finding error with the use of the word "willfully" in all cases.

25

Rather, I find fault with the use of the word in the instruction in this case, which identified the elements of both the crime of murder and the crime of manslaughter in one instruction, with no further guidance to the jury. There was no instruction defining the term or instruction to the jury as to how to differentiate its meaning when considering the elements of each crime. The majority cites several cases that define the term, e.g., "'wilful' means nothing more than doing an act intentionally," *Moore v. State*, 676 So. 2d 244, 246 (Miss. 1996). But in this case, the jury was never told this, not even in a separate instruction, as was given to the jury in *Gollott v. State (In re Nicholson)*, 672 So. 2d 744, 752 (Miss. 1996). Here the lack of definition of the terms in any instruction increased the danger of confusing the jury. *See Howard v. State*, 2 So. 3d 669, 674 (¶18) (Miss. Ct. App. 2008) ("We are mindful that reversible error occurs where a trial judge gives 'instructions likely to mislead or confuse the jury as to the principles of law applicable to the facts in evidence.'" (Quoting *Puckett Mach. v. Edwards*, 641 So. 2d 29, 34 (Miss. 1994)). By including the term "willfully" in the elements of manslaughter without any definition there or elsewhere in the instructions, the jury was erroneously instructed, in essence, to find that willful intent was an element of the crime.[16]

---

[16] In footnote 8, the majority cites several cases to support its contention that there has never been any suggestion that an instruction on manslaughter that uses the word "willfully" was erroneous. However, in several of those cases, the jury instruction given began with the simple definition of manslaughter—"the killing of a human being, without malice, in the heat of passion, . . . without authority of law, and not in necessary self-defense, Miss. Code Ann. § 97-3-35"—and then went on to re-state the elements slightly differently. *See Walker v. State*, 671 So. 2d 581, 596 (Miss. 1995); *Russell v. State*, 789 So. 2d 779, 781-82 (¶10) (Miss. 2001). In others, such as *Gossett v. State*, 660 So. 2d 1285, 1295 (Miss. 1995), the wording of the murder/manslaughter instruction was not raised. Rather, Gossett argued that there was not enough evidence presented to support his murder conviction. *Id*. at 1295. In

¶55.    In my opinion, the omission of the elements of the manner of death, "in a cruel or unusual manner," or "by use of a dangerous weapon" as noted by Chief Judge Barnes, when coupled with the addition of an element of intent, i.e. "willfully," results in error we cannot overlook. "Cumulative error holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Ambrose v. State*, 254 So. 3d 77, 152 (¶269) (Miss. 2018); *Corrothers v. State*, 148 So. 3d 278, 324-25 (¶134) (Miss. 2014); *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007).

¶56.    In this case, because there was only one jury instruction on the elements of the crimes charged, we must scrutinize it for clarity and accuracy.  In essence, this one instruction bore the heavy burden of accurately identifying, and/or defining where necessary,  the elements of each crime to provide Brown with the due process which is the bedrock of our criminal justice system.   In my opinion, it failed.

¶57.    The majority finds no prejudice to Brown by the addition of the word "willfully" to the elements of manslaughter, saying that it only increased the State's burden of proof.  But the supreme court explained in *Harrell* that Brown has the "right to have a jury decide guilt as to each and every element" of the charge against him and failure to correctly define those elements constitutes reversible error. *Harrell*, 134 So. 2d at 275 (¶30).  To add an element

---

another case, *Lee v. State*, 858 So. 2d 124 (Miss. 2003), the only challenge raised by the defendant was the denial of his proposed instruction, which the trial court found to be repetitive.  *Id*. at 128 (¶16).  In my opinion, these cases do not preclude our review, in this case, of the only instruction given on the elements of the crimes and its adequacy to fully inform and not confuse the jury.

to a crime without definition violates that right. Here, the jury found Brown not guilty of first-degree murder and not guilty of possession of a firearm. Had the correct elements of manslaughter been given in the instruction, a jury may have acquitted Brown of manslaughter as well.

¶58. Because of the flawed instruction, Brown was denied his fundamental right to a properly informed jury. In *Hodges* we said:

> The Mississippi Supreme Court has stated that instructing the jury on every element of the charged crime is so basic to our system of justice that it should be enforced by reversal in every case where inadequate instructions are given, regardless of a failure to object at trial.

*Hodges*, 285 So. 3d at 720 (¶36). In my opinion, because the jury in this case was not adequately informed on the elements of Brown's alleged crimes, his conviction must be reversed and his case remanded for a new trial.

**WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION.**

**BARNES, C.J., DISSENTING:**

¶59. The majority admits that the failure to include an essential element of the crime—whether the killing was committed in a "cruel or unusual manner, or by the use of a dangerous weapon"—in Jury Instruction No. 5 "was a clear and obvious error" but contends the error is harmless. I cannot agree, as the Mississippi Supreme Court has unequivocally held "that it is *always and in every case* reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element." *Harrell v. State*, 134 So. 3d 266, 275 (¶30) (Miss. 2014) (emphasis added). Addressing the failure to instruct the jury on the elements of the underlying felony of robbery

28

in a capital murder case, the *Harrell* court overruled its prior decision in *Kolberg v. State*, 829 So. 2d 29 (Miss. 2002), "to the extent that it provides harmless[-]error analysis when the trial court fails to instruct a jury as to elements of a charged crime." *Harrell*, 134 So. 3d at 269, 271, 275 (¶¶12, 18, 30).

¶60.    Reasoning that the current case is "on point" with the supreme court's prior decisions in *Robinson v. State*, 223 Miss. 303, 78 So. 2d 134 (1955), and *Kelly v. State*, 463 So. 2d 1070 (Miss. 1985), the majority declines to follow *Harrell* because the supreme court did not expressly overrule those cases in addition to overruling *Kolberg*. However, when a case clearly overrules a legal principle relied upon in prior decisions, I would find that the holding in those decisions are, "by necessary implication," overruled. *See Washington v. State*, 76 Miss. 270, 272, 24 So. 309, 310 (1898) (holding that although two subsequent supreme court cases providing a different construction of a statute than a prior decision failed to refer to the prior decision, the subsequent cases "by necessary implication overrule[d], and w[ere], doubtless, intended by the court to overrule" the prior decision).

¶61.    I find that the failure to provide the jury with an essential element of manslaughter, as set forth in Mississippi Code Annotated section 97-3-35 (Rev. 2014), is "always and in every case reversible error." Accordingly, I disagree with the majority's finding that the "clear and obvious error" in Jury Instruction No. 5 is harmless. I would reverse and remand for a new trial.

**WESTBROOKS, McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**